## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| THE RELIGIOUS SISTERS OF MERCY, *et al.*,<br><br>      *Plaintiffs,*<br><br>    v.<br><br>ALEX M. AZAR, Secretary of the United States Department of Health and Human Service, *et al.*,<br><br>      *Defendants.* | No. 3:16-cv-386 |
| CATHOLIC BENEFITS ASSOCIATION, *et al.*<br><br>      *Plaintiffs,*<br><br>    v.<br><br>ALEX M AZAR, Secretary of the United States Department of Health and Human Service, *et al.*,<br><br>      *Defendants.* | No. 3:16-cv-432 |

**COMBINED MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS' PARTIAL MOTIONS FOR SUMMARY JUDGMENT AND FOR INJUNCTIVE AND DECLARATORY RELIEF**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................. 2

    A.    HHS's 2016 Rule ................................................................................. 3

    B.    Challenges to the 2016 Rule ............................................................... 4

    C.    The 2020 Rule ..................................................................................... 6

    D.    Challenges to the 2020 Rule ............................................................... 7

    E.    Subsequent Proceedings in This Litigation......................................... 8

ARGUMENT ....................................................................................................................... 9

I.    THE COURT LACKS JURISDICTION TO RESOLVE PLAINTIFFS' CLAIMS .......... 9

    A.    Plaintiffs Lack Any Legally Cognizable Injury................................. 10

        1.    Plaintiffs Have Not Alleged Injury Based on HHS's *Existing* Interpretation of Section 1557. ................................................. 10

        2.    The CBA Plaintiffs Fail to Establish That CBA's Members Have Been Injured, and CBA Therefore Lacks Associational Standing. .......... 16

    B.    Plaintiffs' Claims Based on Potential Future Agency Action Are Unripe ............................................................................................. 17

II.    PLAINTIFFS' CLAIMS FAIL ON THE MERITS. ....................................................... 21

    A.    Plaintiffs Cannot Prevail on Their RFRA Claim. ..............................21

    B.    HHS Has Violated Neither Title IX Nor Section 1557.........................22

        1.    The 2020 Rule Does Not Define "On the Basis of Sex". ......... 22

        2.    The RSM Plaintiffs Misconstrue the Religious Exmption Incporated into the 2020 Rule.................................................. 23

    C.    There Is No Spending Clause Violation. ............................................23

III.    PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF................................ 26

CONCLUSION................................................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967)......................................................................................................... 17

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997)........................................................................................................... 11

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
    548 U.S. 291 (2006)......................................................................................................... 25

*Bergh v. Washington*,
    535 F.2d 505 (9th Cir. 1976) .......................................................................................... 13

*Bostock v. Clayton Cnty., Ga.*,
    140 S. Ct. 1731 (2020)..................................................................................................... 22

*Carver v. Knox Cnty.*,
    887 F.2d 1287 (6th Cir. 1989) ........................................................................................ 13

*Ctr. for Auto Safety v. Nat. Highway Traffic Safety Admin.*,
    710 F.2d 842 (D.C. Cir. 1983) ....................................................................................... 19

*Checker Cab Operations, Inc. v. Miami-Dade Cnty.*,
    899 F.3d 908 (11th Cir. 2018) ........................................................................................ 11

*City of Kennett, Mo. v. Envt. Prot. Agency*,
    887 F.3d 424 (8th Cir. 2018) ............................................................................. 10, 14, 20

*Commodity Futures Trading Com'n v. Chilcott Portfolio Mgmt., Inc.*,
    713 F.2d 1477 (10th Cir. 1983) ...................................................................................... 13

*Conservation Force, Inc. v. Jewell*,
    733 F.3d 1200 (D.C. Cir. 2013) ..................................................................................... 17

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006).................................................................................................... 9, 10

*Dataphase Sys., Inc. v. C.L. Sys., Inc.*,
    640 F.2d 109 (8th Cir. 1981) .......................................................................................... 26

*EEOC v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988) ........................................................................................... 13

*Feller v. Brock*,
    802 F.2d 722 (4th Cir. 1986) .......................................................................................... 13

*Franciscan Alliance, Inc. v. Burwell*,
    227 F. Supp. 3d 660 (N.D. Tex. 2016) ................................................................ 4, 6

*Franciscan Alliance, Inc. v. Azar*,
    414 F. Supp. 3d 928 (N.D. Tex. 2016) ...................................................................... 5

*Frost v. Sioux City, Iowa*,
    920 F.3d 1158 (8th Cir. 2019) ................................................................................ 10

*Georator Corp. v. EEOC*,
    592 F.2d 795 (4th Cir. 1979) .................................................................................. 21

*Gray v. City of Valley Park, Mo.*,
    567 F.3d 976 (9th Cir. 2009) .................................................................................... 9

*Great N. Ry. Co. v. Nat'l R.R Adjustment Bd.*,
    422 F.2d 1187 (7th Cir. 1970) ................................................................................ 13

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
    445 U.S. 375 (1980) ................................................................................................ 13

*Hein v. Freedom from Religion Found.*,
    551 U.S. 587 (2007) .................................................................................................. 9

*Lewis v. Casey*,
    518 U.S. 343 (1996) ................................................................................................ 10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................ 9, 10

*MAI Basic Four, Inc. v. Basis, Inc.*,
    962 F.2d 978 (10th Cir. 1992) ................................................................................ 13

*Massachusetts v. Mellon*,
    262 U.S. 447 (1923) ................................................................................................ 25

*Mausolf v. Babbitt*,
    85 F.3d 1295 (8th Cir. 1996) .................................................................................. 10

*Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*,
    259 F.3d 949 (8th Cir. 2001) .................................................................................. 13

*NFIB v. Sebelius*,
    567 U.S. 519 (2012) ................................................................................................ 25

*Phelps-Roper v. City of Manchester*,
    697 F.3d 678 (8th Cir. 2012) .................................................................................. 12

*Powell v. Noble*,
    798 F.3d 689 (8th Cir. 2015) ........................................................................ 26

*Princeton Univ. v. Schmid*,
    455 U.S. 100 (1982) ...................................................................................... 11

*Pub. Water Supply Dist. No. 8 v. City of Kearney*,
    401 F.3d 930 (8th Cir. 2005) ........................................................................ 17

*Raines v. Byrd*,
    521 U.S. 811 (1997) ........................................................................................ 9

*Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*,
    801 F.3d 927 (8th Cir. 2015) ........................................................................ 21

*Simon v. Eastern Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ......................................................................................... 9

*South Dakota v. Dole*,
    483 U.S. 203 (1987) ...................................................................................... 25

*S. Mills, Inc. v. Nunes*,
    586 F. App'x 702 (11th Cir. 2014) ............................................................... 13

*Standing Rock Housing Auth. v. EEOC*,
    585 F. Supp. 2d 1112 (D.N.D. 2008) ........................................................... 20

*Texas v. United States*,
    523 U.S. 296 (1998) ................................................................................ 17, 18

*TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*,
    91 F.3d 1 (1st Cir. 1996) .............................................................................. 13

*United Food & Comm. Workers Union Local 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996) ................................................................................ 16, 17

*UtahAmerican Energy, Inc. v. Dep't of Labor*,
    685 F.3d 1118 (D.C. Cir. 2012) ................................................................... 13

*W. E. B. DuBois Clubs of Am. v. Clark*,
    389 U.S. 309 (1967) ...................................................................................... 24

*Walker . Azar*,
    --- F. Supp. 3d ---, 2020 WL 4749859 (E.D.N.Y. Aug. 17, 2020) ................ 7

*Washington v. U.S. Dep't of Health & Human Servs.*,
    --- F. Supp. 3d ---, 2020 WL 5095467 (W.D. Wash. Aug. 28, 2020) ............ 8

*W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24,*
   751 F.2d 721 (5th Cir. 1985) ................................................................. 13

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.,*
   --- F. Supp. 3d ---, 2020 WL 5232076 (D.D.C. Sept. 2, 2020) .................................. 8

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2007) ........................................................................ 26

*Wyoming v. U.S. Dep't of Interior,*
   587 F.3d 1245 (10th Cir. 2009) ............................................................ 12

*Zambrana v. Califano,*
   651 F.2d 842 (2d Cir. 1981) .............................................................. 13

## **Statutes**

5 U.S.C. § 704 ............................................................................ 20

20 U.S.C. § 1681 ...................................................................... 3, 24

20 U.S.C. § 1687 ......................................................................... 24

20 U.S.C. § 1688 .......................................................................... 3

42 U.S.C. § 2000bb-1 ..................................................................... 21

42 U.S.C. § 18116 ......................................................................... 3

## **Regulations**

45 C.F.R. § 92.6 .................................................................. 6, 15, 23

45 C.F.R. § 92.207 ........................................................................ 4

81 Fed. Reg. 31,375 (May 18, 2016) ....................................................... 3

85 Fed. Reg. 37,160 (June 19, 2020) ............................................... *passim*

## **Other Authorities**

13C Fed. Prac. & Proc. Juris. § 3533.6 (3d ed.) ......................................... 12

## <u>INTRODUCTION</u>

Defendants respectfully ask that the Court deny Plaintiffs' motions for partial summary judgment and for injunctive relief, ECF Nos. 96, 98, and dismiss these cases in their entirety. After reading Plaintiffs' amended complaints, one could easily be forgiven for mistaking the present day for 2017. Either by mistake or design, what the *Religious Sisters of Mercy* Plaintiffs ("RSM Plaintiffs") call "HHS's interpretation," or what the *Catholic Benefits Association* Plaintiffs ("CBA Plaintiffs") call the "Mandate," are parts of a rule that HHS formally replaced by the Final Rule published earlier this year. *See* 85 Fed. Reg. 37,160 (June 19, 2020) ("2020 Rule").

The uncontroverted facts are that the 2020 Rule does not define "on the basis of sex" to include gender identity or termination of pregnancy, and that HHS changed its interpretation of Section 1557 to include the religious exemption and abortion neutrality language in Title IX, which Plaintiffs have argued for all along in this litigation. More than that, Plaintiffs' claims that they are, or will be, harmed by HHS's prior regulations are unconvincing, because a district court in the Northern District of Texas has expressly vacated the 2016 Rule insofar as it defines "on the basis of sex" to include gender identity and termination of pregnancy. Plaintiffs also fail to allege any concrete risk of future harm from any action by HHS or the EEOC. Accordingly, this Court lacks jurisdiction to decide any of Plaintiffs' claims and should therefore deny Plaintiffs' motions and dismiss these cases.

Although there is no need for the Court to move beyond the threshold question of jurisdiction, Plaintiffs' merits arguments in their motions for partial summary judgment fail as a matter of law. For the same reasons that Plaintiffs lack standing, they cannot show any substantial burden on their religious exercise based on any existing HHS interpretation of Section 1557, and therefore cannot prevail on their Religious Freedom Restoration Act ("RFRA") claims. The RSM

Plaintiffs also allege that HHS has violated Section 1557, Title IX, and the Spending Clause to the United States Constitution by defining discrimination "on the basis of sex" to cover gender identity and termination of pregnancy, but, again, HHS has repealed that definition, which is fatal to the RSM Plaintiffs' arguments. Finally, the RSM Plaintiffs claim that HHS has put limitations on the religious exemption in Title IX when incorporating it into the 2020 Rule, allegedly in violation of Section 1557 and Title IX. But HHS has done no such thing. The 2020 Rule incorporates the entirety of Title IX's religious exemption.

Because this Court lacks jurisdiction, and because Plaintiffs cannot prevail on the claims they press in their motions, they cannot establish likelihood of success on the merits to support an injunction, preliminary or otherwise. Nor can they show any threat of imminent harm or that the equities tilt in their favor. Defendants respectfully ask the Court to deny Plaintiffs' motions and to dismiss these cases.

## **STATEMENT OF FACTS**[1]

These cases arise from HHS's efforts to implement Section 1557 of the Affordable Care Act. Section 1557 applies long-standing anti-discrimination principles to health programs or activities by incorporating four federal anti-discrimination laws into the ACA: Title VI, Title IX, the Age Discrimination Act of 1975, and Section 504 of the Rehabilitation Act. Specifically, Section 1557 directs that

---

[1] Defendants submit this statement of facts in compliance with Local Rule Civil Rule 7.1(A)(3). Defendants note, however, that the issues in these cases are purely legal and not suitable for trial. Defendants do not contest the sincerity of Plaintiffs' religious beliefs but dispute that Plaintiffs can maintain legally cognizable actions for the reasons stated herein.

[e]xcept as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section [504 of the Rehabilitation Act of 1973 (29 U.S.C. 794)], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under [Title I of the ACA] (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section [504], or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a).

Section 1557 further states that the Secretary of HHS "may" (but not that he or she must) issue implementing regulations.  *Id.* § 18116(c).  As relevant here, Title IX in turn provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Title IX states that it does not prohibit discrimination by religious organizations where it would conflict with the religious tenets of such organizations, *id.* § 1681(a)(3), and that nothing in it "shall be construed to require or prohibit any person, or public or private entity, to provide or pay for any benefit or service, including the use of facilities, related to an abortion," 20 U.S.C. § 1688.

### A.     HHS's 2016 Rule

Acting under its statutory authority to "promulgate regulations to implement" Section 1557, 42 U.S.C. § 18116(c), HHS issued a rule in May 2016, codified at 45 C.F.R. Part 92.  *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375 (May 18, 2016) (the "2016 Rule").  As relevant here, the 2016 Rule prohibited discrimination on the basis of sex, and explicitly defined "[o]n the basis of sex" to include "discrimination on the basis of pregnancy,

false pregnancy, termination of pregnancy, or recovery therefrom, childbirth or related medical conditions, sex stereotyping, and gender identity." *Id.* at 31,467. The 2016 Rule further defined "gender identity" to include "an individual's internal sense of gender, which may be male, female, neither, or a combination of male and female . . . ." *Id.* The 2016 Rule listed several specific examples of prohibited discrimination. *See, e.g.*, *id.* at 31,471 (codified at 45 C.F.R. § 92.207). HHS had decided, for example, that covered entities violate Section 1557 if they "deny or limit coverage of a claim, or impose additional cost sharing or other limitations or restrictions on coverage, for specific health services related to gender transition if such denial, limitation, or restriction results in discrimination against a transgender individual." *Id.* (codified at 45 C.F.R. § 92.207(b)(5)). Moreover, even though Section 1557 incorporates Title IX, HHS declined "to incorporate Title IX's blanket religious exemption into [the 2016 R]ule." *Id.* at 31,380.

**B.      Challenges to the 2016 Rule**

The RSM Plaintiffs and the CBA Plaintiffs filed suit in this Court to challenge the 2016 Rule on November 7, 2016 and December 28, 2016, respectively, alleging, as relevant here, that HHS impermissibly defined "on the basis of sex" in the 2016 Rule. *See* ECF No. 1; *Catholic Benefits Ass'n v. Azar*, No. 16-432, ECF No. 1. Both the RSM Plaintiffs and the CBA Plaintiffs moved for preliminary injunctive relief, *see* ECF No. 5; *Catholic Benefits Ass'n v. Azar*, No. 16-432, ECF No. 3, and this Court entered a stay of enforcement on December 30, 2016. ECF No. 23. In similar litigation, on December 31, 2016, the district court for the Northern District of Texas preliminarily enjoined HHS from enforcing the 2016 Rule's prohibition against discrimination on the basis of gender identity or termination of pregnancy. *See Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660, 696 (N.D. Tex. 2016).

On January 23, 2017, this Court amended its December 30, 2016 order, upon Defendants' motion, to make clear that the Court "temporarily stays enforcement, as to the named Plaintiffs, of Section 1557's prohibitions against discrimination on the bases of gender identity and termination of pregnancy." ECF No. 36. In that order, the Court noted that, [i]n addition there is currently in place a *nationwide* preliminary injunction against the very regulations being challenged in these cases which enjoins the HHS from enforcing the Rule's provisions. *Id.*

In May 2017, HHS moved to voluntarily remand the 2016 Rule and to stay further proceedings in these consolidated cases so that HHS could "assess the reasonableness, necessity, and efficacy" of the enjoined provisions. ECF No. 45 at 1. Upon consideration of HHS's motion, the Court concluded that granting the motion to remand was unnecessary in light of the agency's inherent authority to reconsider its rules. ECF No. 56. However, the Court granted HHS's motion to stay proceedings "to allow HHS to reconsider the controversial rules and regulations at issue." *Id.* The court in *Franciscan Alliance* granted HHS's similar request to remand consideration of the 2016 Rule to the agency and to stay litigation pending further rulemaking proceedings. *See Franciscan Alliance v. Azar*, No. 7:16-cv-00108, ECF No. 105 (N.D. Tex. July 10, 2017).

As part of its rulemaking to reconsider the 2016 Rule, HHS published a Proposed Rule in June 2019. 84 Fed. Reg. 27,846, 27,848–49 (June 14, 2019) ("2019 Proposed Rule"). Several months later, in October 2019, the *Franciscan Alliance* court vacated the 2016 Rule's definition of "on the basis of sex" insofar as the definition included "gender identity" and "termination of pregnancy," *Franciscan Alliance v. Azar*, 414 F. Supp. 3d 928, 947 (N.D. Tex. 2019), *Franciscan Alliance v. Azar*, No. 7:16–cv–00108, ECF No. 182 (N.D. Tex. Nov. 21, 2019). The government did not appeal the decision in *Franciscan Alliance*.

5

###### C.    The 2020 Rule

HHS received nearly 200,000 comments on the 2019 Proposed Rule.  After carefully evaluating the extensive record, HHS published the Final Rule on June 19, 2020. 85 Fed Reg. 37,160, 37,160.  Consistent with the Proposed Rule, the 2020 Rule makes several revisions to the Section 1557 regulations, ensuring robust protection of civil rights under the statute.

As relevant here, rather than adopt new definitions for existing civil rights statutes, the 2020 Rule follows the approach of Section 1557 itself by simply incorporating those underlying statutes and regulations in large part.  It thus "repeals the 2016 Rule's definition of 'on the basis of sex,' [and] declines to replace it with a new regulatory definition." *Id*. at 37,178.  It also eliminates the gender identity and termination of pregnancy provisions from the 2016 Rule, agreeing with the *Franciscan Alliance* ruling that foreclosed their inclusion.  *See, e.g.*, *id.* at 37,164–65, 37,168.

Unlike the 2016 Rule, the 2020 Rule incorporates Title IX's religious exemption, and its abortion neutrality language, because, by incorporating Title IX into Section 1557, "Congress intended to incorporate the entire statutory structure, including the abortion and religious exemptions" of Title IX. *Id*. at 37,193 (quoting *Franciscan Alliance*, 227 F. Supp. 3d at 690–91); *see also id*. at 37,207–08.  The 2020 Rule stated that "[t]he 2016 Rule's provisions on sex discrimination . . . would have imposed confusing or contradictory demands on providers, interfered inappropriately with their medical judgment, and potentially burdened their consciences." *Id*. at 37,162.  In addition to deleting those vacated provisions, the 2020 Rule thus states that the application of Section 1557's requirements "shall not be imposed or required" if doing so would conflict with various other statutes, including laws protecting conscience and religious liberty.  *Id*. at 37,246 (to be codified at 45 C.F.R. § 92.6(b)).

**D.      Challenges to the 2020 Rule**

After HHS published the 2020 rule, various plaintiffs brought suit and sought preliminary injunctive relief in different district courts.  *See Washington v. U.S. Dep't of Health & Human Servs.*, No. C20-1105JLR (W.D. Wash.); *Whitman-Walker Clinic, Inc. v. HHS*, No. 20-1630 (D.D.C.); *Walker v. Azar*, No. 20-cv-2834 (E.D.N.Y.); *State of New York v. HHS*, 1:20-cv-05583 (S.D.N.Y.); *Boston Alliance of Gay, Lesbian, Bisexual and Transgender Youth*, 1:20-cv-11297 (D. Mass).  Although the precise challenges differ somewhat, the plaintiffs' core claims substantially overlap.  As relevant here, the plaintiffs contend that the 2020 Rule is contrary to Section 1557 and arbitrary and capricious because it removes the 2016 Rule's definition of discrimination "on the basis of sex" and incorporates Title IX's religious exemption.

On August 17, 2020, the district court for the Eastern District of New York stayed HHS's repeal of the 2016 definition of discrimination "on the basis of sex" insofar as the definition addressed "sex stereotyping," and issued a nationwide preliminary injunction barring enforcement of the repeal.  *Walker v. Azar*, --- F. Supp. 3d ---, 2020 WL 4749859, at *10 (E.D.N.Y. Aug. 17, 2020).  The court recognized that the order in *Franciscan Alliance* had already vacated portions of the 2016 definition, and therefore that the court could not revive the 2016 definition in full, but concluded that plaintiffs had standing to challenge the repeal of a portion of the 2016 definition that the *Franciscan Alliance* order had not vacated—the definition's reference to "sex stereotyping."  *Id.* at *7.  On the merits, the court concluded that the 2020 Rule is contrary to law and likely arbitrary and capricious.  The government has appealed from the *Walker* court's entry of a preliminary injunction to the United States Court of Appeals for the Second Circuit.  *See Walker v. Azar*, Case No. 20-CV-2834 (FB) (SMG), ECF No. 36 (E.D.N.Y. Nov. 10, 2020).

On September 2, 2020, the district court for the District of Columbia concluded that the plaintiffs could likely prevail on their claims that the 2020 Rule was arbitrary and capricious.  The court granted a nationwide preliminary injunction barring HHS from enforcing the repeal of the 2016 definition of discrimination "on the basis of sex" insofar as it includes discrimination based on "sex stereotyping" and also enjoined the 2020 Rule insofar as it incorporated the religious exemption from Title IX.  *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, --- F. Supp. 3d ---, 2020 WL 5232076, at *45 (D.D.C. Sept. 2, 2020).  The government has appealed from the *Whitman-Walker* court's entry of a preliminary injunction to the United States Court of Appeals for the D.C. Circuit.  *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 1:20-cv-01630-JEB, ECF No. 63 (D.D.C. Oct. 31, 2020).

In a third case, brought by the State of Washington, the district court for the Western District of Washington denied the State's motion for a preliminary injunction, based on its conclusion that the State lacked standing.  *Washington v. U.S. Dep't of Health & Human Servs.*, --- F. Supp. 3d ---, 2020 WL 5095467, at *13 (W.D. Wash. Aug. 28, 2020).  The plaintiffs in the other two pending challenges—one in the Southern District of New York and the other in the District of Massachusetts—did not seek preliminary relief and the courts have yet to address the merits of the plaintiffs' claims.

### E.       Subsequent Proceedings in This Litigation

Months after HHS published the 2020 Rule, on November 6, 2020, Plaintiffs moved, with Defendants' consent, to lift the stay of these proceedings.  ECF No. 92.  In their motion, Plaintiffs asked the Court to set a November 23, 2020 deadline for them to amend their complaints, and Plaintiffs agreed that Defendants' response to the amended complaints should not be due until 30 days later, on December 23, 2020.  The Court granted Plaintiffs' motion on November 9, 2020,

giving Plaintiffs until November 23, 2020 to amend and setting a deadline of December 23, 2020 for Defendants to respond.   Plaintiffs filed their amended complaints on November 23, and additionally moved for partial summary judgment and for injunctive relief.  *See* ECF No. 96; ECF No. 98.

## ARGUMENT

### I.    THE COURT LACKS JURISDICTION TO RESOLVE PLAINTIFFS' CLAIMS.

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction.'"  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)). "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,'" *Hein v. Freedom from Religion Found.*, 551 U.S. 587, 597 (2007); however, "it does not attempt to define those terms." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992).  In order to effectuate the Constitution's mandate, the Supreme Court has developed the doctrines of standing and the similar constitutional prerequisites to the exercise of jurisdiction— mootness and ripeness.  *Gray v. City of Valley Park, Mo.*, 567 F.3d 976 (8th Cir. 2009).  These doctrines often overlap in practice because they "all originate in Article III's 'case' or 'controversy language.'"  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)

As discussed below, all of Plaintiffs' claims are jurisdictionally lacking due to one or more of these Article III limitations.  Plaintiffs have no cognizable injury from any existing HHS's regulations, and their claims are either moot—because HHS has repealed the challenged portions of the 2016 Rule and incorporate religious and abortion exemptions that apply to Plaintiffs—or unripe to the degree any alleged injury is based on any possible future regulatory or enforcement action.

A.      **Plaintiffs Lack Any Legally Cognizable Injury.**

Article III standing is a jurisdictional prerequisite, and "[t]he party invoking federal jurisdiction bears the burden of establishing" it. *Lujan*, 504 U.S. at 561. The requirement that litigants have standing encompasses three elements, all of which must be satisfied for each plaintiff and each claim in every lawsuit. *DaimlerChrysler*, 547 U.S. at 352 ("A plaintiff must demonstrate standing for each claim . . . [and] separately for each form of relief sought."); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."). The "would-be litigant must have suffered an injury in fact," which requires the "invasion of a legally protected interest" in a "concrete and particularized," and "actual or imminent" manner. *Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir. 1996) (citation and quotation marks omitted). Next, there must be "a causal connection between the alleged injury and the conduct being challenged." *Id.* Finally, it must be "likely," as opposed to merely speculative, "that the injury will be redressed by a favorable decision." *Id.* Where a plaintiff "seeks declaratory and injunctive relief, past injuries alone are insufficient to establish standing." *Frost v. Sioux City, Iowa*, 920 F.3d 1158, 1162 (8th Cir. 2019). Rather, the plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of injury." *Id.* "In future injury cases, the plaintiff must demonstrate that the threatened injury is certainly impending, or there is a substantial risk that the harm will occur. *City of Kennett, Mo. v. Envt. Prot. Agency*, 887 F.3d 424, 431 (8th Cir. 2018).

1.      Plaintiffs Are Not Injured Based on HHS's *Existing* Interpretation of Section 1557.

Plaintiffs in these cases have not established any concrete or substantially probable injury that could support this Court's Article III jurisdiction. All of Plaintiffs' claims are based on a misstatement of HHS's existing interpretation of Section 1557. The RSM Plaintiffs claim that HHS "interprets 'sex' discrimination to include discrimination based on 'gender identity' or

'termination of pregnancy.'"  RSM Mem. at 1.  The CBA Plaintiffs similarly base their claims on what they call HHS's "Mandate," which they claim "coerces them . . . to provide and cover gender-transition services and abortions contrary to their Catholic faith."  CBA Mem. at 10.  Plaintiffs are clearly wrong.

While the 2016 Rule did define discrimination "on the basis of sex" to include discrimination based on "gender identity" or "termination of pregnancy," HHS had already repealed the 2016 Rule's definition of "on the basis of sex" through the 2020 Rule, and removed the gender identity and termination of pregnancy provisions—which had already been vacated in *Franciscan Alliance*—by the time Plaintiffs most recently amended their complaints.  *See, e.g.*, 85 Fed. Reg. at 37,162, 37,178.  Thus, at that time, Plaintiffs plainly suffered no injury, and could not suffer any future injury, from the inclusion of "gender identity" or "termination of pregnancy" in the definition of "on the basis of sex" in the 2016 Rule, as those aspects had been vacated and then superseded by the 2020 Rule.  Plaintiffs therefore lack standing to bring their claims.

Settled doctrine on the related concept of mootness also confirms the point.  "Mootness has been described as the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quotation marks and citation omitted).  And "[t]ypically, when a party challenges a law as unconstitutional and seeks declaratory and prospective injunctive relief, a superseding statute or regulation moots the case" because "[w]hen a challenged law is preempted, it cannot inflict further injury redressable by declaration or injunction."  *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 915 (11th Cir. 2018) (cleaned up); *accord Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam) ("substantia[l] amend[ment]" of challenged regulation mooted

controversy over its validity); *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012) (en banc) ("When a law has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot."); *Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1253 (10th Cir. 2009) (Gorsuch, J.) (Because the "new Park Service rule also supersedes its 2007 rule, it is now beyond cavil . . . that the petitioners' underlying challenge to that rule is also moot."); *id.* at 1253 ("[B]y eliminating the issues upon which this case is based, [the agency's] adoption of the new rule has rendered the appeal moot." (quotation marks omitted)); 13C Fed. Prac. & Proc. Juris. § 3533.6 (3d ed.) ("Mootness principles have direct and often obvious application in dealing with attacks on legislative rules that have expired or been repealed. Mootness has overtaken attacks on expired statutes, ordinances, court rules, and administrative acts." (footnotes omitted)).

Here, Plaintiffs do not dispute that the 2020 Rule removes the definition of "on the basis of sex" that Plaintiffs have challenged in this litigation, including the gender identity and termination of pregnancy provisions. Indeed, Plaintiffs favorably discuss the 2020 Rule in their briefs, precisely *because* it repealed that definition and incorporated the religious and abortion exemptions in Title IX. *See* RSM Mem. at 10–11; CBA Mem. at 3. Plaintiffs thus cannot show any concrete and imminent injury stemming from the defunct provisions of the 2016 Rule on which Plaintiffs claims are based.

Urging otherwise, Plaintiffs contend that, despite the vacatur and repeal of the 2016 Rule's definition of "on the basis of sex," there is a "risk" they will be injured because two district courts—those in the *Walker* and *Whitman-Walker* cases—have enjoined certain aspects of the 2020 Rule. *See* RSM Am. Compl. ¶¶ 78–97; RSM Mem. at 13–15; CBA 2d Am. Compl. ¶¶ 203–18; CBA Mem. at 4. Plaintiffs' argument fails for several reasons.

To start, the fact that other district courts have enjoined the 2020 Rule is not a sufficient basis for declaratory or injunctive relief in this separate litigation. The Supreme Court has articulated an "established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980). Thus, every court of appeals, including the Eighth Circuit, has suggested that district courts should avoid interfering with the remedial authority of other district courts. *See, e.g.*, *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953 (8th Cir. 2001) (noting "the general policy against concurrent federal litigation").[2]

---

[2] *See also TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996) ("Where the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer."); *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) ("Generally, principles of comity and judicial economy make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts."); *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988) (describing past Supreme Court decision as setting forth principle that "no precise rule governs relations between federal district courts possessing jurisdiction, but the general principle is to avoid duplicative litigation"); *Feller v. Brock*, 802 F.2d 722, 727–28 (4th Cir. 1986) ("Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders."); *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728–29 (5th Cir. 1985) (holding that federal district courts have an obligation to "avoid rulings which may trench upon the authority of sister courts"); *Carver v. Knox Cnty.*, 887 F.2d 1287, 1293 (6th Cir. 1989) (noting the "intolerable situation" of a state subject to conflicting injunctions and explaining that "the only common sense approach" is for the courts to speak "with a single voice"); *Great N. Ry. Co. v. Nat'l R.R. Adjustment Bd.*, 422 F.2d 1187, 1193 (7th Cir. 1970) ("The purposes of the rule [of comity] are to avoid unnecessarily burdening courts and to avoid possible embarrassment from conflicting results."); *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases."); *MAI Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978, 987 (10th Cir. 1992) (citing to *Commodity Futures Trading Com'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983), which in turn quotes *Bergh*, 535 F.2d at 507); *S. Mills, Inc. v. Nunes*, 586 F. App'x 702, 706 (11th Cir. 2014) (approving the district court's decision to "avoid[] multiplicitous proceedings and potentially conflicting judgments"); *UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (cautioning against simultaneous suits that would "potentially produce contradictory decisions" and "in turn, generate dueling appeals").

Try as they might, Plaintiffs cannot show that they are likely to suffer harm simply because other district courts entered injunctions against HHS in challenges to the 2020 Rule. The provisions barring discrimination on the basis of gender identity or termination of pregnancy were vacated and thus not put back in place by any of the existing injunctions. Moreover, the government has appealed those district court decisions. *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 1:20-cv-01630-JEB, ECF No. 63 (D.D.C. Oct. 31, 2020); *Walker v. Azar*, Case No. 20-CV-2834 (FB) (SMG), ECF No. 36 (E.D.N.Y. Nov. 10, 2020). To the extent Plaintiffs are concerned about the ultimate outcome of those suits, Plaintiffs could present their arguments to the relevant courts of appeal as amicus supporting the government's appeals. But Plaintiffs may not use this litigation to collaterally attack the decisions enjoining portions of the 2020 Rule in other federal courts where they have no legally cognizable injury.

In any event, the Court need not wade into the effect of the overlapping injunctions issued by the district courts that have addressed the 2020 Rule because there is a second and more straightforward reason why Plaintiffs lack standing to pursue their claims: the district court in *Franciscan Alliance* has vacated the 2016 Rule *nationwide* insofar as it defined "on the basis of sex" to include gender identity and termination of pregnancy. There is therefore *no chance*—much less a "substantial risk," *City of Kennett, Mo.*, 887 F.3d at 431—that HHS could go back to the 2016 Rule and enforce provisions that have already been vacated.

Further, Plaintiffs cannot allege any substantially probable injury for another reason: the 2020 Rule incorporates existing federal conscience laws that protect Plaintiffs. Specifically, although HHS declined to include Title IX's religious exemption in the 2016 Rule, it changed positions in the 2020 Rule—as the Plaintiffs in these cases previously urged, *see, e.g.*, RSM Compl. ¶¶ 131, ECF No. 1—explicitly stating that Section 1557's requirements "shall not be

imposed or required" if doing so would conflict with specified laws protecting conscience and religious liberty, including Title IX and RFRA.  85 Fed. Reg. at 37,246 (to be codified at 45 C.F.R. 92.6(b)).[3]  The 2020 Rule's preamble states that this change "emphasizes that the Section 1557 regulation will be implemented consistent with . . . conscience and religious freedom statutes." *Id*. 37,205.  Of particular relevance here, HHS underscored in the 2020 Rule that compliance with Section 1557 is subject to RFRA, meaning that HHS cannot substantially burden Plaintiffs' (including CBA's members') religious exercise absent a compelling interest and without showing that the agency's actions were the least restrictive means of advancing that interest.  *See* 85 Fed. Reg. at 37,245; *see also id.* at 37,207 ("[T]he Department is bound to enforce Section 1557 in compliance with RFRA.").

As Plaintiffs point out, the *Whitman-Walker* district court preliminarily enjoined HHS's incorporation of the Title IX religious exemption into the 2020 Rule.  However, HHS has clearly expressed its intent for the exemption to apply, and therefore any injury Plaintiffs allege based on the *absence* of such an exemption is not fairly traceable to HHS.  Indeed, HHS has recognized that "the Department is bound to enforce Section 1557 in compliance with RFRA" and that "particular provisions in the 2016 Rule violated RFRA as applied to private plaintiffs [in *Franciscan Alliance*]."  85 Fed. Reg. at 37,207. Moreover, HHS has appealed the *Whitman-Walker* court's preliminary injunction, and Plaintiffs here may participate in that appeal as amici if they choose. For the reasons discussed above, Plaintiffs do not have a legally cognizable injury to pursue in this forum.

---

[3] The RSM Plaintiffs argue that, as adopted by HHS, Title IX's religious exemption does not cover their activities.  *See* RSM Mem. at 32–34.  That is incorrect, as discussed below.  *See infra* Part II.B.2.

15

2.  The CBA Plaintiffs Fail to Establish That CBA's Members Have Been Injured, and CBA Therefore Lacks Associational Standing.

The CBA Plaintiffs separately allege that they have been "concretely harmed" because, "[i]n 2016, two Catholic dioceses, both members of CBA, received involuntary notices from their insurers that their health plans had begun covering gender transition services."  CBA Mem. at 10. The CBA Plaintiffs' Second Amended Complaint, however, makes clear that those notices were "a result of the 2016 Rule," CBA 2d Am. Compl. ¶ 136, and the portion of that prohibits discrimination on the basis of gender identity has been vacated and replaced by the 2020 Rule. Thus, whatever "concrete[]" harm, if any, the CBA Plaintiffs may have suffered, *id*. ¶¶ 136–40, it is not the result of an extant agency regulation.

The CBA Plaintiffs' only other claim of present harm is that, with respect to "CBA members with self-insured plans" that "have taken steps to ensure their plans reflect their religious convictions and exclude gender-transition and abortion coverage," the "TPAs that administer these plans have demanded that CBA members indemnify the TPA or otherwise accept the TPAs liability."  CBA Mem. at 10 (citing CBA 2d Am. Compl. ¶¶ 21–22, 240, 244).  But here again, the CBA Plaintiffs' operative complaint is clear that the TPAs' actions—to the degree they can be attributed to Defendants at all—are the result of the 2016 Rule, which the CBA Plaintiffs refer to as "the Mandate," *see* CBA 2d Am. Compl. ¶¶ 21–22, 240, 244; *see also id.* ¶3 (defining the "Mandate" as the "requirements imposed by the 2016 Rule").  And the definition of "on the basis of sex" in the 2016 Rule that barred discrimination based on gender identity and termination of pregnancy have been vacated and superseded by the 2020 Rule.

Because the CBA Plaintiffs have failed to show why any individual CBA member has standing, it necessarily follows that CBA lacks associational standing to participate in this litigation.  *See United Food & Comm. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S.

544, 554 (1996) (the associational standing "test's first requirement" is "that at least one of the organization's members [must] have standing to sue on his own"); *see, e.g.*, *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1206 (D.C. Cir. 2013) ("When a petitioner claims association standing, it is not enough to aver that unidentified members have been injured. Rather, the petitioner must specifically identify members who have suffered the requisite harm."). CBA therefore cannot properly obtain relief on behalf of its members, and the CBA Plaintiffs' claims on behalf of its members should be dismissed for that additional reason.[4]

### B.    Plaintiffs' Claims Based on Potential Future Agency Action Are Unripe.

"The ripeness doctrine is grounded in both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration." *Pub. Water Supply Dist. No. 8 v. City of Kearney,* 401 F.3d 930, 932 (8th Cir. 2005). Article III limits the federal courts to deciding "Cases" and "Controversies" and thus prohibits them from issuing advisory opinions. *Id.* "One kind of advisory opinion is an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (internal quotations and citations omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998) (internal quotations and citations omitted). Ripeness requires a court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 300–01 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)).

---

[4] The CBA Plaintiffs have not only failed to identify a CBA member who has suffered an injury as a result of any extant agency action—they also have not identified any of their members, other than the three who are named Plaintiffs (out of the thousands of CBA members in total), to the Court or to Defendants. As such, even if the Court were to grant the CBA Plaintiffs' motion for an injunction as to "CBA and its members," CBA Mem. at 26, it is not clear how Defendants could comply with such an injunction without knowing the identities of those members.

Because the 2020 Rule does not define discrimination "on the basis of sex," and instead merely tracks the statute, Plaintiffs are forced to speculate how the agency and courts will interpret Section 1557 or other statutes in particular situations in the future  Indeed, Plaintiffs acknowledge frankly that their goal is to prevent HHS from adopting a position in the future:  The RSM Plaintiffs do not seek merely to invalidate any *existing* agency interpretation; they seek prospective relief prohibiting HHS from ever "interpreting Section 1557 in a way that would force Plaintiffs to perform or pay for gender transition procedures and abortions."  RSM Mem. at 2.  The CBA Plaintiffs similarly ask the Court to "declare unlawful *any* interpretation of Section 1557 and related federal laws (including Title IX and Title VII) that would require Plaintiffs and their members to perform or cover gender transition and abortion services . . . , and to permanently enjoin HHS and the EEOC from enforcing any such interpretation against Plaintiffs, their members, and their respective insurers or third party administrators."  CBA Mem. at 6 (emphasis added).

Plaintiffs' renewed claims are therefore an attempt to obtain an injunction that would bind the government from adopting future regulations to which Plaintiffs may object.  The CBA Plaintiffs, again, are quite clear on this point:  Even though HHS has repealed the portions of the 2016 Rule they found objectionable, and has included the religious and abortion exemptions they requested, the CBA Plaintiffs ask the Court to help them avoid an "administrative seesaw," so they do not "have to wait yet another four years for an uncertain regulatory process to play out."  CBA Mem. at 5.  But that is just not how federal jurisdiction or administrative law work.

It should go without saying that entertaining hypothetical challenges based on speculation about hypothetical future agency interpretations is not a legitimate enterprise for Article III courts. *See, e.g.*, *Texas*, 523 U.S. at 300; *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 162–65

(1967).  Plaintiffs' allegations of harm based on some future change in HHS interpretation rests on several layers of speculation: first, that HHS will, at an unknown point in the future, revoke the 2020 Rule and adopt a new rule that again defines or explicitly interprets "on the basis of sex" in a way that Plaintiffs find objectionable; second, that HHS would also change course regarding the applicability of the Title IX religious and abortion exemptions; and, third, that Plaintiffs would not be exempt under another federal conscience law, like RFRA, that would preclude application of any future, hypothetical interpretation of Section 1557.  This kind of conjectural claim is not ripe for review.  Indeed, even challenges to *proposed* rules are generally deemed premature.  *See Ctr. for Auto Safety v. Nat. Highway Traffic Safety Admin.*, 710 F.2d 842, 846 (D.C. Cir. 1983) (noting that "the issuance of a notice of proposed rulemaking . . . often will not be ripe for review because the rule may or may not be adopted or enforced"); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("[A] regulation is not ordinarily the type of agency action 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.").  *A fortiori*, the Court should reject Plaintiffs' speculative claim that they may be harmed by an interpretation of Section 1557 that HHS may never adopt or ever enforce against Plaintiffs.

The same is true as to the CBA Plaintiffs' speculation that any of the named CBA Plaintiffs or CBA's members may be subject to an EEOC enforcement action in the future.  *See* CBA 2d Am. Compl. ¶¶ 156–61; CBA Mem. at 7–10.  Among the CBA Plaintiffs are two national membership organizations, one of which, CBA, has "over 1,030 employer members plus 5,100 member Catholic parishes, covering more than 90,000 employees and their families."  CBA 2d Am. Compl. ¶ 53.  Yet, even though this litigation has been ongoing in some form since 2016, the

CBA Plaintiffs have not identified any impending (much less pending) EEOC investigation against any of themselves or any CBA members.  Nor have the CBA Plaintiffs provided this Court with any other basis to conclude that, going forward, such an EEOC investigation or enforcement action is probable.  Rather, the most the CBA Plaintiffs can do to substantiate their alleged risk of harm, apparently, is to point to (1) a case from 2016 brought against a financial services firm, (2) an amicus brief EEOC submitted in 2016 in litigation between other private parties, (3) an article describing an EEOC enforcement action against in 2017 against Wal-Mart, and (4) general statements on the EEOC's website regarding protections for transgender and LGBT workers.  *See* CBA 2d Am. Compl. ¶¶ 156–61; CBA Mem. at 9.  That falls far short of demonstrating the "substantial risk" of future enforcement that would be necessary to create a justiciable claim.  *See City of Kennett, Mo.*, 887 F.3d at 431.

Indeed, even if the CBA Plaintiffs had identified a cognizable threat of injury by the EEOC, their claims against the agency could not succeed because they have not identified any final agency action subject to judicial review.  *See* 5 U.S.C. § 704.  As another court in this District concluded when reviewing EEOC enforcement procedures as to private employers like the CBA Plaintiffs, a challenge to an EEOC administrative subpoena—issued in the course of an ongoing EEOC enforcement action—is not ripe for, among other reasons, lack of final agency action.  *See Standing Rock Housing Auth. v. EEOC*, 585 F. Supp. 2d 1112, 1118–20 (D.N.D. 2008) (Hovland, J.).  Here, where the CBA Plaintiffs have not identified even any EEOC investigation against any of CBA's members, there is no final agency action by the EEOC that this Court may review.[5]

---

[5] Of course, the lack of any final agency action by the EEOC would not leave employers like CBA's members unable to pursue a challenge to a final action as necessary.  As the court in *Standing Rock Housing Authority*, and as others have recognized, "'[i]f and when the EEOC . . . files suit in district court" against an employer, "the issue . . . will come to life, and the [employer]

## II.      PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT.

### A.      Plaintiffs Cannot Prevail on Their RFRA Claims.

The predicate question in any RFRA challenge is whether the litigant's religious exercise or belief is substantially burdened by the challenged federal government action.  *See* 42 U.S.C. § 2000bb-1; *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, 801 F.3d 927, 937 (8th Cir. 2015) ("To state a claim under RFRA, a religious objector must show that the government substantially burdens a sincere religious exercise or belief."), *vacated on other grounds by Dep't of Health & Human Servs. v. CNS Int'l Ministries*, No. 15-775 (2016).

For all the reasons discussed above that Plaintiffs in these cases lack sufficient injury to establish standing, and that their claims are either moot or not ripe, Plaintiffs cannot show that Defendants are substantially burdening Plaintiffs' religious exercise or beliefs.  Indeed, although the RSM Plaintiffs state that "HHS's action substantially burdens Plaintiffs' religious exercise by 'pressuring them to abandon it on pain of 'significant monetary penalties,'" they cite only to HHS's prior interpretation of Section 1557, in the 2016 Rule, when describing HHS's alleged "action." RSM Mem. at 18.  RSM's total failure to point to any existing interpretation by HHS as a basis for their assertion that HHS is substantially burdening their religious exercise is fatal to their RFRA claim.  The same goes for the CBA Plaintiffs.  They claim that the "Mandate" substantially burdens CBA members' religious exercise, CBA Mem. at 18–19, but the CBA Plaintiffs themselves define the "Mandate" as "the requirements imposed by the 2016 Rule," CBA 2d Am. Compl. ¶ 3, the relevant parts of which HHS has repealed (and which have also been vacated by another district court).   Furthermore,  HHS  has  recognized  that  the  2016  Rule  violated  RFRA  in  some

---

will have the opportunity to refute the charges."  585 F. Supp. 2d at 1120 (quoting *Georator Corp. v. EEOC*, 592 F.2d 795, 768 (4th Cir. 1979)); *see id.* (collecting cases).

circumstances, 85 Fed. Reg. at 37,207, and has committed itself to complying with its obligations

to enforce Section 1557 consistent with RFRA, *see* 85 Fed. Reg. at 37,207; *see also id.* at 37,205

("The Section 1557 regulation will be implemented consistent with . . . conscience and religious

freedom statutes.").  In short, because Plaintiffs can identify no existing action of Defendants that

burdens their religious exercise, their RFRA claims necessarily fail.

### B.    HHS Has Violated Neither Title IX Nor Section 1557.

#### 1.    The 2020 Rule Does Not Define "On the Basis of Sex."

By again slicing, dicing, and mixing the no-longer extant portions of the 2016 Rule with

the conclusions of the *Walker* and *Whitman-Walker* district courts, the RSM Plaintiffs claim that

HHS has interpreted "sex" in Title IX to include "gender identity," which the RSM Plaintiffs

contend is contrary to Title IX and Section 1557.  RSM Mem. at 25–32.  Yet, in the 2020 Rule, as

discussed herein, HHS specifically repealed the 2016 Rule's definition of "on the basis of sex,"

and instead declined to replace it with a new regulatory definition, letting the underlying statutes

speak for themselves.  85 Fed. Reg. at 37,178.  Clearly, HHS's approach—*i.e.*, simply

incorporating by reference the statutory language to allow courts to interpret its meaning as the

need arises—cannot violate either Title IX or Section 1557 as the RSM Plaintiffs would have the

Court believe.  Indeed, by definition, HHS's interpretation (or lack thereof, rather) of the term

"sex" in Section 1557 and Title IX does not violate those statutes.  The RSM Plaintiffs appear to

invite this Court to determine once and for all what those statutory terms mean, particularly in light

of the Supreme Court's recent decision in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731

(2020).  But that would not be an appropriate exercise for the Court in the absence of a live case

or controversy between the parties.  *See supra* Part I.

2.     The RSM Plaintiffs Misconstrue the Religious Exemption in the 2020 Rule.

The RSM Plaintiffs also argue that HHS violated Title IX and Section 1557 by "halfway" incorporating into the 2020 Rule the religious exemption contained in Title IX.  RSM Mem. at 32–34.  That argument, however, is based on a misunderstanding of the 2020 Rule and ultimately lacks merit.

One need only read the regulatory language adopted in the 2020 Rule to see that HHS did not impose any limitations at all on its incorporation of the Title IX religious exemption.  The 2020 Rule states that, "[i]nsofar as the application of any requirement under this part would violate, depart from, or contradict definitions, *exemptions*, affirmative rights or protections provided by any of the statutes cited in paragraph (a)[, which includes Title IX] . . . such application shall not be imposed."  85 Fed. Reg. at 37,245 (to be codified at 45 C.F.R. § 92.6(b)).  Based on the operative regulatory text, there can be no question that HHS incorporated the Title IX religious exemption without alteration.

The RSM Plaintiffs' contrary claim is based on language in the 2020 Rule's preamble where HHS responded to commenters who stated that Title IX's religious exemption "should not apply broadly to large religious institutional healthcare facilities, [and] that conscience protections and religious liberty cannot apply to institutions like hospitals and healthcare systems."  *Id.* at 37,207.  Rejecting those commenters' suggestion to limit the application of Title IX's exemption to only certain entities, HHS explained that "[a]ny educational operation of an entity may be exempt from Title IX due to control by a religious organization."  *Id.*  The RSM Plaintiffs misread that language to suggest that HHS incorporated the Title IX exemption only to cover the "educational operations" of entities covered by that exemption.  RSM Mem. at 33.  The point was

only to illustrate that the exemption should not be limited to certain types of *entities*, not to limit its application to only certain types of *activities*.

Indeed, by its own terms, Title IX applies to "any education program or activity receiving Federal financial assistance," 20 U.S.C. § 1681(a), and Title IX defines a "program or activity" under § 1681(a) to include "all of the operations" of "an entire corporation, partnership, or other private organization" that "is principally engaged in the business of providing education, *health care*, housing, social services, or parks and recreation." 20 U.S.C. § 1687(3)(A)(ii) (emphasis added). As incorporated into Section 1557 by the 2020 Rule, the Title IX religious exemption, therefore, does not apply to only the "educational operations" of the entity, and HHS did not limit the incorporation of the exemption in any way. 85 Fed. Reg. at 37,207; *see also id.* at 37,193 (acknowledging that "the *Franciscan Alliance* court vacated the 'termination of pregnancy' language in the 2016 Rule because it failed to incorporate the abortion-neutrality language from the Title IX statute" and that *Franciscan Alliance* "held that 'Congress intended to incorporate the entire statutory structure, including the abortion and religious exemptions'").

Nothing in the 2020 Rule actually suggests, as the RSM Plaintiffs mistakenly believe, that HHS incorporated a narrower version of the religious exemption than exists in Title IX statute itself. The RSM Plaintiffs' claim therefore fails.

### C.     There Is No Spending Clause Violation.

The RSM Plaintiffs also cannot prevail on their Spending Clause claim, which they raise on behalf of the State of North Dakota. To start, as discussed above, the RMS Plaintiffs' claims are not ripe, and therefore these cases present no concrete factual situation in which to evaluate the RSM Plaintiffs' Spending Clause claim. Courts "should not be forced to decide . . . constitutional questions in a vacuum." *W. E. B. DuBois Clubs of Am. v. Clark*, 389 U.S. 309, 312 (1967).

24

Because those aspects of the 2016 Rule that Plaintiffs challenged have been both vacated and repealed, there is no reasonable likelihood of an enforcement action that would implicate North Dakota's federal funding.

For similar reasons, the RSM Plaintiffs' Spending Clause claim also fails on the merits. Congress's Article I authority to "set the terms on which it disburses federal money to the States" is "broad." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). As the RSM Plaintiffs acknowledge, in order to give rise to a Spending Clause claim, there must be a condition on federal funds that is coercive. RSM Mem. at 35 (citing *South Dakota v. Dole*, 483 U.S. 203, 207–08 (1987)). A conditional offer of federal funds will be found to be unduly coercive only in the unusual case—"[i]n the typical case we look to the States to defend their prerogatives by adopting 'the simple expedient of not yielding' to federal blandishments." *NFIB v. Sebelius*, 567 U.S. 519, 579 (2012) (Roberts, C.J.) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 482 (1923)).

Here, HHS imposes no coercion *at all* to "perform and insure gender transitions and abortions," as the RSM Plaintiffs' claim, RSM Mem. at 35, much less any unduly coercive condition. As with their other arguments, the RSM Plaintiffs' Spending Clause claim could exist only in some alternate reality where enforcement of 2016 Rule's definition of "on the basis of sex" had not been vacated in *Franciscan Alliance* or repealed in the 2020 Rule. The RSM Plaintiffs do not identify any existing interpretation advanced by HHS that "interpret[s] 'sex to require performing and covering gender-transition procedures," RSM Mem. at 26. Nor could they, given that the relevant portion of the 2016 Rule no longer exists. The fundamental premise of the RSM Plaintiffs' Spending Clause argument is incorrect, and therefore they are not entitled to summary judgment and the claim should be dismissed.

25

## III.    PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF.

For all the reasons described above, Plaintiffs are not likely to succeed on the merits of any of their claims, and, specifically, cannot prevail on the claims on which Plaintiffs seek injunctive relief.  Thus, under the Eighth Circuit's familiar *Dataphase* analysis, Plaintiffs are not entitled to either permanent or preliminary injunctive relief.  *See Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) (en banc); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  They cannot show even a "substantial question" going to the merits, much less a "substantial probability" that they will prevail.  *Dataphase Sys.*, 640 F.2d at 113–14.  Moreover, because the *Franciscan Alliance* court vacated the 2016 Rule "insofar as it defines '*On the basis of sex*' to include gender identity and termination of pregnancy," *Franciscan Alliance v. Azar*, No. 7:16–cv–00108, ECF No. 182 (N.D. Tex. Nov. 21, 2019), and because HHS does not define "on the basis of sex" in the 2020 Rule (but rather tracks Section 1557), among other reasons, Plaintiffs have not established that they will suffer any harm at all, much less any harm that is "certain and great and of such imminence" to support the extraordinary remedy of a preliminary injunction. *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015).

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask that the Court deny Plaintiffs' motions and that the Court dismiss these cases in their entirety.

Dated:   December 23, 2020                              Respectfully Submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

MICHELLE R. BENNETT
Assistant Director, Federal Programs
Branch

26

/s/ *Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington, DC  20005
Telephone: (202) 305-0878
Email: Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*

27