Local AO 450 (rev. 5/10)

# United States District Court
### District of North Dakota

The Religious Sisters of Mercy, et al.,

        Plaintiffs,

vs.

Norris Cochran, Acting Secretary of the United States Department of Health and Human Services, et al.,

        Defendants.

JUDGMENT IN A CIVIL CASE

Case No.   3:16-cv-386

☐ **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☐ **Decision by Court**. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

☑ **Decision on Motion**. This action came before the Court on motion. The issues have been considered and a decision rendered.

☐ **Stipulation**. This action came before the court on motion of the parties. The issues have been resolved.

☐ **Dismissal**. This action was voluntarily dismissed by Plaintiff pursuant to Fed. R. Civ. P. 41(a)(1)(ii).

**IT IS ORDERED AND ADJUDGED:**

See attached.

Date: February 19, 2021

ROBERT J. ANSLEY, CLERK OF COURT

by: */s/ Pamela Bloomquist-Burman, Deputy Clerk*

JUDGMENT is entered in favor of Plaintiffs Religious Sisters of Mercy, Sacred Heart Mercy Health Care Center (Alma, MI), SMP Health System, University of Mary, Catholic Benefits Association ("CBA"), Diocese of Fargo, Catholic Charities North Dakota, and Catholic Medical Association (collectively, the "Catholic Plaintiffs") as to their claims under the Religious Freedom Restoration Act ("RFRA") challenging the interpretations of Section 1557 and Title VII that require the Catholic Plaintiffs to perform and provide insurance coverage for gender-transition procedures.

JUDGMENT is entered in favor of the Defendants as to Plaintiff State of North Dakota's claims under the Spending Clause. See Fed. R. Civ. P. 56(f).

The Court **DECLARES** that Defendant U.S. Department of Health and Human Services' ("HHS") interpretation of Section 1557 that requires the Catholic Plaintiffs to perform and provide insurance coverage for gender-transition procedures[1] violates their sincerely held religious beliefs without satisfying strict scrutiny under the RFRA. Accordingly, the Court **PERMANENTLY ENJOINS AND RESTRAINS** HHS, Acting Secretary Cochran, their divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or participation with them, including their successors in office, from interpreting or enforcing Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), or any implementing regulations thereto against the Catholic Plaintiffs in a manner that would require them to perform or provide insurance coverage for gender-transition procedures, including by denying federal financial assistance because of their failure to perform or provide insurance coverage for such procedures or by otherwise pursuing,

---

[1] As used in this order, the term "gender-transition procedures" includes surgery, counseling, provision of pharmaceuticals, or other treatments sought in furtherance of a gender transition.

charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions.

The Court further **DECLARES** that Defendant Equal Employment Opportunity Commission's ("EEOC") interpretation of Title VII that requires the CBA and its members to provide insurance coverage for gender-transition procedures violates their sincerely held religious beliefs without satisfying strict scrutiny under the RFRA.  Accordingly, the Court **PERMANENTLY ENJOINS AND RESTRAINS** the EEOC, Chair Burrows, their divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or participation with them, including their successors in office, from interpreting or enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., or any implementing regulations thereto against the CBA and its members in a manner that would require them to provide insurance coverage for gender-transition procedures, including by denying federal financial assistance because of their failure to provide insurance coverage for such procedures or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions.

The relief provided in this order shall be restricted to the Catholic Plaintiffs, their present and future members, anyone acting in concert or participation with them, and their respective health plans and any insurers or third-party administrators ("TPA") in connection with such health plans.  To come within the scope of this order, a CBA member must meet the following criteria:

(a) The employer is not yet protected from interpretations of Section 1557 and Title VII that require the provision or coverage of gender transitions by any other judicial order;

(b) The CBA has determined that the employer meets the CBA's strict membership criteria;

(c) The CBA's membership criteria have not changed since the CBA filed its initial complaint on December 28, 2016; and

(d) The employer is not subject to an adverse ruling on the merits in another case involving interpretations of Section 1557 and Title VII that require the provision or coverage of gender transitions.

Neither HHS nor the EEOC violates this order by taking any of the above-described actions against any CBA member, anyone acting in concert or participation with a CBA member, or a CBA member's health plans and any insurers or TPAs in connection with such health plans if the agency officials directly responsible for taking these actions are unaware of that entity's status as a CBA member or relevant relationship to a CBA member.

However, if either agency, unaware of an entity's status as a CBA member or relevant relationship to a CBA member, takes any of the above-described actions, the CBA member and the CBA may promptly notify a directly responsible agency official of the fact of the member's membership in the CBA (and the CBA member's satisfaction of the (a)-(d) criteria, described above) or the entity's relevant relationship to a CBA member and its protection under this order. Once such an official receives such notice from the CBA member and verification of the same by the CBA, the agency shall promptly comply with this order with respect to such member or related entity.

Nothing in this order shall prevent the EEOC from:

(1) taking any action in connection with the acceptance of a charge for filing regardless of the source, including receiving an online inquiry via the agency's Public Portal or requesting or receiving a questionnaire or other correspondence from the charging

party, when the charge concerns an allegation against a CBA member concerning the exclusion of gender-transition procedures from its insurance coverage;

(2) accepting a charge alleging that a CBA member does not provide insurance coverage for gender-transition procedures, and from entering the charge into the EEOC's computer systems;

(3) serving a notice of the charge upon a CBA member within ten days as required by 42 U.S.C. § 2000e-5(b); or

(4) issuing a right-to-sue notice to a charging party who has filed a charge against a CBA member concerning the exclusion of gender-transition procedures from its insurance plan in accordance with the requirements and procedures set forth in 42 U.S.C. § 2000e-5(b) & (f)(1) and 29 C.F.R. § 1601.28(a)(1) & (2).

The injunction contained in this order replaces the injunction issued in the Court's January 19, 2021 order.