IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| THE RELIGIOUS SISTERS OF MERCY, *et al.*, <br><br> *Plaintiffs,* <br> v. <br><br> XAVIER BECERRA, *et al.,* <br><br> *Defendants.* | No. 3:16-cv-386 |
| THE CATHOLIC BENEFITS ASSOCIATION; DIOCESE OF FARGO; CATHOLIC CHARITIES NORTH DAKOTA; and CATHOLIC MEDICAL ASSOCIATION, <br><br> *Plaintiffs,* <br> v. <br><br> XAVIER BECERRA, *et al.,* <br><br> *Defendants.* | No. 3:16-cv-432 |

**CATHOLIC BENEFITS ASSOCIATION'S MOTION TO SEAL DECLARATIONS ESTABLISHING THE CBA'S ASSOCIATIONAL STANDING**

The Catholic Benefits Association, one of the plaintiffs in Case No. 16-cv-432, respectfully submits this motion to seal the declarations of three of its members, which establish the CBA's associational standing under the new criterion of associational standing announced by the Eighth Circuit in the appeal of this case. Redacted version of the declarations, which remove any identifying information are submitted here as **Exhibit 1-3**. A fourth, non-redacted declaration of a CBA member that is a named plaintiff, Catholic Charities of North Dakota, is attached as **Exhibit 4**.

1

Finally, a declaration of the CBA attesting to the harm it and its members will suffer if its members names are made public is attached here as **Exhibit 5**.

## LEGAL STANDARD

The public has a well-established right of access to court records. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Whether to seal a document is left to the sound discretion of the court. *See Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990). The court must consider less restrictive alternatives and must explain any decision to seal documents. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988); *In re Sealed Documents*, Standing Order (D.N.D. Sept. 18, 2019).

The Eighth Circuit has stated that "only the most compelling reasons can justify non-disclosure of judicial records." *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006) (internal quotation marks omitted). "[E]ven where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason." *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (citing *Press-Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 509-11 (1984)). Therefore, the party seeking sealing must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter*, 297 F.3d at 548.

## DISCUSSION

This protracted case concerns the Catholic Benefits Association Plaintiffs' effort to enjoin the Department of Health and Human Services and the EEOC from interpreting Section 1557 of the Affordable Care Act and Title VII of the Civil Rights Act to require the members of the Catholic Benefits Association to cover and provide "gender-transition services" in violation of their

2

religious beliefs. The Government Defendants have never contested the merits of the CBA or its named-Plaintiff members' claims. The Government has instead focused on whether the CBA's members face a credible threat of enforcement and thus have standing to sue.

On appeal of this Court's order granting the Plaintiffs' motions for summary judgment, the Eighth Circuit held that the individual Plaintiffs in the case, CBA's named-plaintiff members, the Diocese of Fargo, Catholic Charities of North Dakota, and Catholic Medical and Dental Association; as well the Religious Sisters of Mercy Plaintiffs (plaintiffs in Case No. 16-cv-386) face a credible threat of enforcement and thus have standing. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 606-08 (8th Cir. 2022).

As to the CBA itself, the Eighth Circuit determined that the evidence of associational standing relied upon by this Court was insufficient to establish associational standing, because at least one <u>additional</u> member must be identified who (1) has standing in its own right and (2) is not a named plaintiff. *Id.* at 602 ("Other than the three named plaintiffs who are CBA members—the Diocese, Catholic Charities, and CMA—the CBA has otherwise failed to identify members who have suffered the requisite harm. Accordingly, we hold that the CBA lacks associational standing to sue on behalf of unnamed members."). The Eighth Circuit then entered a general remand to this Court "for further proceedings consistent with this opinion." *Id.* at 609.

As explained by the Supplemental Argument to the Court's Question Regarding its Authority to Receive Evidence of the CBA's Associational Standing on Remand filed simultaneously herewith, the CBA believes that the best way to resolve this case is to permit the CBA to file a motion for summary judgment, attaching declarations of non-named-plaintiff members who have standing and thus confer on the CBA associational standing per the Eighth Circuit's decision. To that end,

3

the CBA has attached hereto four declarations which establish the CBA's associational standing as a matter of law. These non-named-plaintiff members include:

(1) a consortium of Catholic health clinics that receive Medicare and Medicaid funding (federal financial assistance requisite to trigger Section 1557) and employ nineteen individuals (greater than Title VII's fifteen-employee threshold);

(2) a Catholic-owned pediatric clinic that employs eighteen individuals (Title VII standing) and receives Medicaid funding (Section 1557 standing);

(3) a Catholic Ministry that provides care for senior services, employs 382 individuals (Title VII standing) and receives Medicare and Medicaid funding (Section 1557 standing); and

(4) Catholic Charities of North Dakota, which employs 82 individuals (Title VII standing) and receives Medicare and Medicaid funding (Section 1557 standing).[1]

These CBA members object to providing or covering "gender transition services" and would have standing to sue in their own right to challenge the Government's interpretations of Section 1557 and Title VII.

The CBA respectfully moves the Court for an order permitting it to file the first three of these declarations under seal and order that only attorneys in the Case No. 16-cv-432 may view the declarations. The CBA members who have submitted declarations have substantial concern that if their identities are made known to the public and the government, they face substantial threat of adverse action and harassment. *See* **Exhibit** 5, Declaration of Doug Wilson at ¶ 6. The CBA's

---

[1] The CBA has identified this member by name because it is one of the original plaintiffs in this case and has approved identifying itself in this case. Although Catholic Charities of North Dakota verified the CBA's second amended complaint, it did not provide a separate declaration as required by the Eighth Circuit on appeal. Its declaration is attached hereto as **Exhibit 4**.

ability to advocate on behalf of its members' First Amendment rights will be substantially harmed if its members' identities are made public. *Id.* at ¶ 7.

Just recently, the Supreme Court reaffirmed that forced disclosure of the identities of members of an expressive association like the CBA can "constitute as effective a restraint on freedom of association as [other] forms of governmental action." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (quoting *NAACP v. Alabama*, 357 U.S. 449, 462 (1958). This is because "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association," *id.*, and because there exists a "vital relationship between freedom to associate and privacy in one's associations." *Id.* (quoting *NAACP*, 357 U.S. at 460, 462). Indeed, long-time federal practice has permitted an association to establish through submission of "Jane Doe," anonymous member affidavits for precisely these reasons. *E.g.*, *National Treasury Employees Union v. U.S. Department of Treasury*, 25 F.3d 237, 242 (5th Cir. 1994) (permitting an organizational plaintiff whose members fear identifying themselves to the government to demonstrate standing by submitting a "Jane Doe" affidavit from a member explaining how it would be injured by the government action at issue."). As explained, the CBA's First Amendment expression will be substantially chilled if its members identities are released. Further, the CBA has filed publicly available redacted versions of the member affidavits, which ensures the Court is sealing nothing more than is necessary to protect the CBA's members' First Amendment rights.

WHEREFORE, the CBA respectfully requests the Court permit it file under seal **Exhibits 1-3** and further limit access to those exhibits to attorneys' eyes only.

Respectfully submitted July 21, 2023,

/s/ *Andrew Nussbaum*
L. Martin Nussbaum
Andrew Nussbaum
Nussbaum | Gleason PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
(719) 428-4937
martin@nussbaumgleason.com
andrew@nussbaumgleason.com
Attorneys for Plaintiffs The Catholic Benefits Association, *et al.*