IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| THE RELIGIOUS SISTERS OF MERCY, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> XAVIER BECERRA, Secretary of the United States Department of Health and Human Service, *et al.*, <br><br> *Defendants.* | No. 3:16-cv-386 |
| CATHOLIC BENEFITS ASSOCIATION, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> XAVIER BECERRA, Secretary of the United States Department of Health and Human Service, *et al.*, <br><br> *Defendants.* | No. 3:16-cv-432 |

**DEFENDANTS' OPPOSITION TO CATHOLIC BENEFITS ASSOCIATION'S MOTION TO SEAL**

If the Court determines that it continues to have jurisdiction over this litigation, Defendants respectfully ask that the Court deny the Catholic Benefits Association's ("CBA") motion to seal the declarations submitted to attempt to establish associational standing, ECF No. 152.[1] CBA has failed to substantiate any alleged harm that would befall its members or the CBA itself if the

---

[1] For the reasons discussed in their Supplemental Filing Regarding Procedural Posture on Remand, Defendants respectfully submit that jurisdiction is lacking. *See* ECF No. 156.

declarations were filed on the public docket. CBA has therefore failed to provide compelling reasons to overcome the strong presumption in favor of public access to judicial records, and the motion should be denied.

## RELEVANT BACKGROUND

As relevant here, in its review of this Court's entry of Final Judgment in favor of Plaintiffs, the Eighth Circuit reversed the Court's determination that the CBA has associational standing to sue on behalf of its unnamed members. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 609 (8th Cir. 2022). The Eighth Circuit explained that the Supreme Court has instructed that "[a] court cannot 'accept[] the organizations' self-descriptions of their membership' because 'the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.'" *Id.* at 602 (second alteration in original) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)). Thus, "the [Supreme] Court 'require[s] plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm.'" *Id*. (second alteration in original) (quoting *Summers*, 555 U.S. at 499). The Eighth Circuit concluded that the CBA "failed to identify members who have suffered the requisite harm." *Id*. It thus held that "the CBA lacks associational standing to sue on behalf of unnamed members" as to both Section 1557 and Title VII. *Id*. The Eighth Circuit otherwise upheld this Court's conclusions and affirmed the Court's "grant of permanent injunctive relief except to the extent it recognizes the associational standing of the CBA." *Id.* at 609. The Eighth Circuit remanded for further proceedings consistent with its opinion. *Id.*

On July 21, 2023, the CBA and Defendants submitted briefing regarding the litigation's procedural posture and whether the Court continues to have jurisdiction in light of the Eighth Circuit's decision. *See* ECF Nos. 155, 156. The CBA additionally filed the instant motion to seal

the declarations of three of its members to shield "any identifying information" regarding those members contained in their declarations. *See* ECF No. 152 at 1.

## LEGAL STANDARD

The public has a well-established right of access to court records. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Where the common law right of access is implicated, the court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013).

Although whether to seal a document is left to the sound discretion of the court, *see Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990), in the Eighth Circuit, "only the most compelling reasons can justify non-disclosure of judicial records," *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006) (internal quotation marks omitted). It is the moving party's burden to provide those compelling reasons. *IDT Corp.*, 709 F.3d at 1224. In order to grant a motion to seal, the court must consider less restrictive alternatives and must explain its decision. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988).

## ARGUMENT

**I.    THE CBA HAS NOT ESTABLISHED ANY COMPELLING REASON TO SEAL THE IDENTITIES OF ITS NAMED MEMBERS.**

The CBA's motion falls far short of establishing any compelling reason to justify non-disclosure of the identities of the members whose declarations it provided to the Court. Indeed, the CBA barely attempts to identify any particularized harm to its members whatsoever. The CBA relies only on the following general statement from the declaration of CBA's own Chief Executive Officer, Douglas G. Wilson:

3

> Given the present cultural moment where cancellation and other adverse action—whether by social media, boycott, government action, or otherwise—is commonplace, CBA members have substantial concern that if their identities were made public they would face significant adverse action and distraction from their mission because of their Catholic beliefs and their efforts to align their actions with those beliefs.

Declaration of Douglas G. Wilson, ECF No. 152-5 ("Wilson Decl."); *see also* ECF No. 152 at 4.[2]

To start, Mr. Wilson's statement is inadmissible hearsay. *See* ECF No. 152 at 4 (relying only on Mr. Wilson's declaration for the truth of the assertion that "the CBA members who have submitted declarations have substantial concern that if their identities are made known to the public and the government, they face substantial threat of adverse action and harassment"); Fed. R. Evid. 801. For that reason alone, the Court should deny the CBA's motion as unsupported by any admissible evidence. *See LADS Network Solutions, Inc. v. Agilis Sys., LLC*, Case No. 4:19-cv-00011-SEP, 2022 WL 4534432, *2 (E.D. Mo. Sept. 28, 2022) ("Because the Court decides motions for leave to file under seal 'in light of the relevant facts and circumstances of the particular case,' lack of admissible evidence alone constitutes a basis for denying the motion." (quoting *Nixon*, 435 U.S. at 599)); *Skky, LLC v. Facebook, Inc.*, 191 F. Supp. 3d 977, 981 (D. Minn. 2016) (denying motion to seal for lack of evidence supporting bare assertions of harm from disclosure).

Even if the Court were to consider Mr. Wilson's testimony on behalf of the CBA's members, generalized fears of "cancellation and other adverse action," are not sufficiently grounded or particularized to justify denying public access to the information the CBA seeks to redact. Mr. Wilson points to no particular instance in which *any* of the CBA's members—much

---

[2] The CBA has not provided unredacted versions of the declarations the CBA asks to file under seal to counsel for Defendants. The undersigned requested a copy of unredacted versions in order to respond to the CBA's motion to seal, and the undersigned agreed to keep the unredacted versions "for attorneys' eyes only" pending the Court's ruling on the motion. The CBA would not agree to share them, however. Defendants have not pressed the issue with the Court based on the CBA's counsel's representation that none of the redacted portions of the declarations contains statements related to any alleged harm that would result from public disclosure.

less the CBA members on whose declarations the CBA relies—have suffered any harm in the past related to the disclosure of their identities, nor does he provide any details to suggest they would face any credible harm if they were identified in this lawsuit. Courts regularly deny motions to seal where, as here, compelling reasons to proceed in secret are lacking. *See, e.g.*, *FA ND Chev, LLC v. Kupper*, Case No. 1:20-cv-138, 2022 WL 18621063 (D.N.D. Aug. 22, 2022) (denying motion for leave to file commercially sensitive documents under seal because grounds were "conclusory and not compelling"). *Compare Flynt v. Lombardi*, 885 F.3d 508, 512 (8th Cir. 2018) (affirming determination that materials should remain sealed because uncovering identity of medical execution team members in death penalty litigation would result in harm to the individuals and the State).

The information that the CBA seeks to protect—three of its members' identities and identifying information contained in their declarations—is also not inherently sensitive or of the type that courts typically allow to remain secret. *See, e.g.*, *Fink v. BNSF Railway Co.*, Case No. 1:20-cv-222, 2023 WL 3044769, *1 (D.N.D. Apr. 21, 2023) (denying motion to seal, noting that "[p]ublic access is the norm," and that "[t]his is not an unusual case or one involving highly confidential records"); *Skky*, 191 F. Supp. 3d at 981 ("On its face, the information Defendants seek to file under seal is not the type of sensitive information that might typically be subject to an order to seal, such as financial data, proprietary or trade secret information, or personal health details."); *see also cf. Broussard v. Waldron Sch. Dist.*, 866 F. Supp. 2d 1042, 1048 (W.D. Ark. 2011) ("A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." (citing *Doe v. Frank,* 951 F.2d 320 (11th Cir.1992)).

Nor is it a sufficient basis to grant the CBA's motion that this lawsuit pertains to the CBA members' religious beliefs. In the analogous context of motions to participate as a party pseudonymously, some concrete, reasonable fear of harm or the need to protect particularly intimate information is required to overcome the general rule of public participation, even where matters of conscience are at issue. *See Freedom From Religion Found., Inc. v. Emanuel Cnty. School Sys.*, 109 F. Supp. 3d 1353, 1357–58 (S.D. Ga. 2015) ("While religion is certainly an individual matter of conscience that is constitutionally shielded from government intervention, it is generally practiced openly and communally, and no court from this or any other circuit has considered a plaintiff's religious beliefs to be a matter of such sensitivity as to automatically entitle the plaintiff to Doe status." (citing *Santa Fe Indep. School Dist. v. Doe*, 530 U.S. 290, 301–02 (2000)); *Broussard*, 866 F. Supp. 2d at 1048 (denying plaintiffs' request to proceed anonymously in § 1983 action alleging disruption of worship and religious expression, explaining that "the risk that a plaintiff may suffer some embarrassment is not enough").

Aside from its conclusory assertion of harm based on purported possible "cancellation," the CBA also attempts to justify its requested relief based on the purported First Amendment rights of the CBA itself. Specifically, the CBA asserts that its "ability to advocate on behalf of its members' First Amendment rights will be substantially harmed if its members' identities are made public." ECF No. 152 at 4–5. Here again, however, the CBA relies only on the barest, conclusory statement from Mr. Wilson. *See* Wilson Decl. ¶ 7 ("If the CBA was forced to disclose its members' identities, it would substantially chill the ability of the CBA to advocate for its members['] First Amendment rights."). Mr. Wilson provides no explanation of how providing such information would chill the CBA's speech, what speech would be chilled, or why he believes his statement to

6

be true or reasonable. *Id.* The CBA has therefore failed to meet its burden to show that any harm to the CBA itself outweighs the public's right of access.

The cases the CBA relies on, moreover, do not support its request to file under seal. In *Americans for Prosperity v. Bonta*, 141 S. Ct. 2373 (2021), the plaintiffs brought a First Amendment challenge to a California law requiring disclosure to the California Attorney General's Office IRS forms containing the names and addresses of their major donors. *Id.* at 2379. The Supreme Court sided with the plaintiffs after concluding that "exacting scrutiny" applied to the challenged "compelled disclosure requirements." *Id.* at 2383, 2389. Key to the Court's analysis was that California's disclosure requirement was a "dramatic mismatch" to the state's interest in preventing charitable fraud and self-dealing. *Id.* at 2386. Here, not only did the CBA voluntarily file this lawsuit—understanding that it would have to meet all jurisdictional requirements, including standing—but there exists no government-mandated disclosure. Indeed, unlike in *Americans for Prosperity*, there exists no evidence whatsoever of independent harms to CBA's members. And in any event, there is no "dramatic mismatch" between interest and disclosure. *Americans for Prosperity* has no bearing in these circumstances.

CBA also asserts that "long-time federal practice has permitted an association to establish standing through submission of 'Jane Doe,' anonymous member affidavits" to protect expressive association. ECF No. 152 at 5. To support that broad claim, the CBA relies on a single out-of-circuit case, *National Treasury Employees Union v. U.S. Department of Treasury*, 25 F.3d 237 (5th Cir. 1994). *See* ECF No. 152 at 5. But that decision—which addressed a challenge to an IRS questionnaire requiring disclosure of information on employees' personal use of drugs and alcohol—does not support the CBA's argument. The Fifth Circuit did not "permit[] an organizational plaintiff whose members fear identifying themselves to the government to

7

demonstrate standing by submitting a 'Jane Doe' affidavit," as CBA claims. *See* ECF No. 152 at 5. The court, in fact, concluded that the associations "failed to show that its members, or any one of them, has standing individually." *Nat'l Treasury Emps. Union*, 25 F.3d at 245. In concluding that the associations lacked standing, the court explained that it was

> particularly troublesome to their assertion of standing [ ] that the plaintiffs also have not even alleged that there is a threat of such an injury to any individual member of the association; or stated another way, the plaintiffs have identified no "Jane Doe" member of the NTEU who, if required to fill out [the challenged questionnaire] would tend to incriminate herself by giving truthful answers.

*Id.* at 242. Although the reference to the absence of an identified "Jane Doe" member loosely suggests a pseudonymous affidavit may be an avenue for establishing associational standing in some circumstances—such as where self-identification would reveal highly personal or incriminating information, as in *National Treasury Employees Union*—it does not constitute a blanket acceptance of keeping association members' identities out of the public record.

Defendants' own research has identified only one case, *League of United Latin American Citizens v. Abbott*, EP-21-CV-00259-DCG-JES-JVB, 2022 WL 2806850 (W.D. Tex. July 18, 2022) ("*LULAC*"), in which the court allowed non-party association members to proceed anonymously to establish associational standing based on, at least in part, an analysis of First Amendment freedom of association concerns. *See id.* at *5–6. The court did so only after considering detailed evidence of prior "threats and violence" against the associations' members, and upon concluding that the fear of present harm to those members was reasonable. *See id.* at *5–6. Although the court also took into account the members' privacy interests, the court emphasized that "none of the considerations discussed in this Order, standing alone, are sufficient to maintain the anonymity of the Association members." *Id.* at *7, 9. Given that the CBA has not established any reasonable fear of harm from the disclosure of its members' identities—as discussed above—Defendants submit that *LULAC* supports denial of the CBA's motion.

## II. THE PUBLIC RIGHT OF ACCESS WEIGHS HEAVILY IN FAVOR OF DENYING THE CBA'S MOTION.

The CBA's motion should be denied because there is a strong, countervailing common-law access interest in identifying the members for whom the CBA seeks to establish associational standing. As the Eighth Circuit explained in *IDT Corp. v. eBay*, "[m]odern cases on the common-law right of access say that 'the weight to be given to the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring federal courts.'" 709 F.3d at 1224 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)).

In the present case, the Eighth Circuit held that the CBA lacked associational standing, precisely because it "failed to identify members who have suffered the requisite harm." *See Religious Sisters of Mercy*, 55 F.4th at 602. Thus, according to the Eighth Circuit, the participation of the CBA's named members plays a key role in whether this Court has the power to hear the CBA's lawsuit, which gives considerable weight to the presumption of access to the information the CBA seeks to file under seal. *IDT Corp.*, 709 F.3d at 1224. *But see LULAC*, 2022 WL 2806850, at *7–8.

The public interest in access is also particularly strong here because the CBA seeks to be covered by this Court's injunction preventing Defendants from enforcing statutory and possible future regulatory provisions to protect the CBA members' employees, and those the CBA members service, against discrimination. *See* Final Judgement, ECF No. 133. The effect of allowing the "named" CBA plaintiffs to proceed anonymously would be to prevent the public from learning which organizations the CBA purports to represent, and to deprive third parties from knowing that the CBA members seek exemption from otherwise generally applicable anti-discrimination laws.

Given the lack of any credible harm alleged by the CBA, these salutary interests in disclosure are more than sufficient to deny the CBA's motion.

## CONCLUSION

For the foregoing reasons, the Court should deny CBA's motion to seal.

Dated:   August 4, 2023                           Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

MICHELLE R. BENNETT
Assistant Director, Federal Programs Branch

/s/ *Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington, DC 20005
Telephone: (202) 305-0878
Email: Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*