IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| THE RELIGIOUS SISTERS OF MERCY, *et al.*,<br><br>    *Plaintiffs,*<br>v.<br><br>XAVIER BECERRA, *et al.,*<br><br>    *Defendants.* | No. 3:16-cv-386 |
| THE CATHOLIC BENEFITS ASSOCIATION; DIOCESE OF FARGO; CATHOLIC CHARITIES NORTH DAKOTA; and CATHOLIC MEDICAL ASSOCIATION,<br><br>    *Plaintiffs,*<br>v.<br><br>XAVIER BECERRA, *et al.,*<br><br>    *Defendants.* | No. 3:16-cv-432 |

**THE CATHOLIC BENEFITS ASSOCIATION PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ATTORNEY'S FEES AND EXPENSES**

    As prevailing parties in this litigation, Plaintiffs the Catholic Benefits Association, Diocese of Fargo, Catholic Charities of North Dakota, and Catholic Medical Association (collectively "CBA Plaintiffs" or "Plaintiffs") seek recovery of their reasonable attorney's fees, costs, and expert expenses. In considering this request, it is helpful to recall the nature of this litigation.

    This case began more than seven years ago when the Department of Health and Human Services and the Equal Employment Opportunity Commission reinterpreted Section 1557 of the

Affordable Care Act and Title VII of the Civil Rights Act to require healthcare providers to perform and employers to insure gender-transition services (the "Mandate"). The Mandate compels even those healthcare providers and employers, like CBA Plaintiffs, whose sincerely held religious beliefs and medical judgment forbid them from facilitating gender-transition services. Religious organizations, including the United States Conference of Catholic Bishops, have repeatedly implored Defendants to provide a religious exemption—as required by RFRA, Title VII, and Section 1557. Yet Defendants refused. Defendants instead forced CBA Plaintiffs to an existential choice: violate their faith by providing and insuring gender-transition surgeries and cross-sex hormones or face organization-ending scandal, fines, and civil and criminal penalties. As the Court explained, "[u]nder the prevailing interpretations of Section 1557 and Title VII, refusal to perform or cover gender-transition procedures would result in the Catholic Plaintiffs losing millions of dollars in federal healthcare funding and incurring civil and criminal liability." *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1147 (D.N.D. 2021).

Defendants would not relent, so CBA Plaintiffs sued. And they won. They won a stay of the Mandate. They won a permanent injunction on summary judgment. And they won an Eighth Circuit appeal. Yet CBA Plaintiffs not only prevailed against HHS, they won cutting-edge relief against EEOC. Three cases were filed nationwide challenging the Mandate. In the other two, the religious plaintiffs sought relief against HHS alone. Only CBA Plaintiffs' suit secured an injunction against HHS's interpretation of Section 1557 *and* EEOC's interpretation of Title VII to require coverage of gender-transition services. After seven years of complex litigation, three presidential administrations, numerous rule changes, and myriad lawsuits challenging those rule changes, CBA

Plaintiffs now have permanent protection against HHS's and EEOC's illegal and dangerous attempt to force them to violate their consciences.

As prevailing parties, Plaintiffs now request reasonable attorney's fees. Over six years of litigation, counsel expended 2,344 hours after courtesy discounts made each month. In the further exercise of billing judgment, counsel has cut 243.25 hours from this total, or 10.4%. Based on prevailing market rates adjusted for the time-value of money, Plaintiffs request fees of $1,022,378, expert fees of $37,693.50, and costs of $4979.45. This request is well-supported by evidence and precedent.

## ARGUMENT

CBA Plaintiffs are prevailing parties in this litigation and thus entitled to recover attorney's fees and expenses under 42 U.S.C. § 1988(b) ("Section 1988"). *See* ECF No. 124, 170. Counsel's request for fees and expenses is reasonable based on the hours expended and market rates.

1. **Plaintiffs are entitled to attorney's fees.**

Section 1988, which applies against federal agencies under 28 U.S.C. § 2412(b), authorizes attorney's fees for the prevailing party "[i]n any action or proceeding to enforce . . . the Religious Freedom Restoration Act." 42 U.S.C. § 1988(b); *N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1085 (8th Cir. 2006). This was an action to enforce RFRA, ECF No. 124, so Section 1988(b) applies.

"[A] plaintiff 'prevails' when [1] actual relief on the merits of his claim [2] materially alters the legal relationship between the parties [3] by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Advantage Media, L.L.C. v. City of Hopkins, Minn.*, 511 F.3d 833, 836 (8th Cir. 2008). Here, CBA Plaintiffs met this test by prevailing on their RFRA claim against HHS and EEOC at summary judgment and by obtaining permanent injunctive relief prohibiting Defendants from forcing CBA Plaintiffs to cover or perform gender-transition services. ECF Nos. 124,

170. Because they prevailed against Defendants, CBA Plaintiffs are entitled to "a reasonable attorney's fee." 42 U.S.C. § 1988(b).

**2. Plaintiffs' attorney's fees are reasonable.**

Courts employ a two-step analysis for determining a reasonable attorney's fee award. *Burton v. Nilkanth Pizza Inc.*, 20 F.4th 428, 431 (8th Cir. 2021). At step one, the Court must "calculate the lodestar by multiplying the number of hours of work by the prevailing hourly rate." *Id.* (cleaned up). At step two, the Court considers whether the factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) require modification of the lodestar amount. *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) The undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. "If these factors lead the court to change the basic or lodestar figure, usually (but not always) the change will be an increase." *Avalon*, 689 F.2d at 140. A court also has discretion to enhance a fee because of the public importance or other feature of a case. *See, e.g.*, *Taylor v. Jones*, 653 F.2d 1193, 1206 (8th Cir. 1981) (20% enhancement approved).

Finally, counsel is entitled to recover its fees and costs related to preparing its motion for attorney's fees. *Jones v. MacMillan Bloedel Containers, Inc.*, 685 F.2d 236, 239 (8th Cir. 1982). This is because "[i]t would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating

his rightful claim to the fee." *Id.* Under *Jones*, "it is beyond peradventure that such fees [incurred litigating a fee award] are recoverable." *Hixon v. City of Golden Valley*, 2007 WL 4373111, at *4 (D. Minn. 2007). The fees the CBA Plaintiffs incurred related to preparation of the petition including the recruiting and informing of the three fee experts is set forth in Exhibit 1-P.

**2.1. Counsel's hours are reasonable.**

To calculate the reasonable number of hours expended, courts determine whether the total number of hours claimed are reasonable and whether specific hours claimed are reasonably expended. *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 856 (8th Cir. 2021). Contemporaneous billing records are acceptable documentation for determining reasonable hours. *MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1061 (8th Cir. 1988); *see also* Ex. 1-B (contemporaneous billing records).

**2.1.1. Total hours**

After seven years of litigation, CBA Plaintiffs won permanent injunctive relief against HHS and EEOC's Mandate. At the outset of this litigation, CBA Plaintiffs and their members were on the brink of being forced to violate their consciences or incur millions in civil penalties under the Mandate. They filed a motion for a preliminary injunction, and the Court stayed the Mandate for nearly five years. *See Catholic Benefits Ass'n v. Burwell*, 16-cv-432, ECF Nos. 3-4, 6. In that time, Defendants sought and received thirteen stays of the case to fix the issues with the Mandate identified by CBA Plaintiffs.[1] When Defendants failed to do so, CBA Plaintiffs sought, and won,

---

[1] *See Religious Sisters of Mercy et al. v. Becerra et. al.*, 3:16-cv-386 (D.N.D)., ECF No. 45 (May 26, 2017) (request to stay), ECF No. (May 26, 2017) (request to extend stay), ECF No. 61 (May 21, 2018) (request to extend stay), ECF No. 62 (July 20, 2018) (request to extend stay), ECF No. 64 (Oct. 18, 2018) (request to extend stay), ECF No. 67 (Jan. 15, 2019) (request to stay), ECF No. 70 (Feb. 19, 2019) (request to extend stay), ECF No. 71 (May 31, 2019) (request to extend stay), ECF No. 76 (Oct. 4, 2019) (request to extend stay), ECF No. 78 (Jan. 2, 2020) (request to extend stay), ECF No. 81 (Apr. 3, 2020) (request to extend stay), ECF No. 83 (Jul. 6, 2020) (request to extend stay), ECF No. 86 (Aug. 5, 2020) (request to extend stay), ECF No. 88 (Oct. 5, 2020) (request to extend stay).

permanent injunctive relief, prohibiting HHS and EEOC from enforcing their illegal Mandate. *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1153-55 (D.N.D. 2021). Counsel then prevailed on the merits of the dispute before the Eighth Circuit, including that EEOC's interpretation of Title VII to require Catholic employers to cover gender-transition procedures violated their religious beliefs. *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602-09 (8th Cir. 2022).

This excellent result took more than seven years, spanning three presidential administrations, and a trip to the Eighth Circuit. Counsel presented oral argument to this Court on Plaintiffs' motion for summary judgment and on Defendants' appeal to the Eighth Circuit. Counsel had to brief a motion for preliminary injunction, cross motions for summary judgment, and an appeal to the Eighth Circuit. Counsel had to perform cutting-edge, extensive research to show that EEOC is in fact interpreting Title VII to require religious employers to insure gender-transition procedures in their health plans in coordination with HHS. Counsel had to carefully track Defendants' shifting regulatory positions, and the complicated, overlapping injunctions won against Defendants' 2020 Rule and the implications of the *Franciscan Alliance* vacatur order.

Counsel expended 2,344 hours litigating this matter over seven years, as documented in the contemporaneous billing records in Exhibits 1-B and 1-C. That amount is reasonable given the prolonged and complex nature of the litigation. *See* Ex. 1 (Nussbaum Decl.) ¶¶ 31-46; Ex. 3 (Baine Decl.) ¶¶ 10-15, 29-31; Ex. 4 (Eid Decl.) ¶¶ 16-22. Indeed, in the closely related, if more procedurally complex, litigation in *Franciscan Alliance v. Burwell,* the court there found that "3,197.25 hours [to be] reasonable" and awarded fees based on that figure. *Franciscan All., Inc. v. Becerra*, at *6 (N.D. Tex. July 11, 2023). But even if this figure were not reasonable, counsel, in the exercise of

6

billing judgment, has significantly reduced the total number of hours by 243.25, or 10.4%, leaving a total of 2,100.75 hours. *See* Nussbaum Decl. ¶¶ 18-20; Ex. 1-D.

### 2.1.2. Billing judgment

To show the reasonableness of the hours billed, counsel seeking fees must exercise "billing judgment," which requires documentation of the hours charged and of the hours written off as excessive or redundant. *See Henderson v. Crimmins*, 147 F. Supp. 3d 780, 789 (N.D. Iowa 2015). Counsel exercised billing judgment in four ways.

First, counsel exercised billing judgment each month it invoiced its clients, cutting redundant and excessive time from its invoices. Nussbaum Decl. ¶ 18. The Nussbaum Declaration states, "as the billing attorney, I reviewed each monthly bill before we sent it to [CBA Plaintiffs]. When doing that, I routinely deleted or reduced specific entries if I felt the work was inefficient or unproductive." *Id.* This kind of "courtesy discount" is sufficient to satisfy the billing judgment requirement. *Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, at *3 (E.D. Mo. Aug. 31, 2018) (collecting cases) ("The Court concludes that the 'courtesy discount' plaintiff's counsel applied to its statements was reasonable and reflects the application of counsel's own billing judgment.").

Second, counsel eliminated all hours related to the Mandate from September 8, 2015 through May 12, 2016. Nussbaum Decl. ¶ 18. The notice of proposed rulemaking regarding the 2016 Rule was issued on September 8, 2015, at which point counsel expended substantial time researching and advising the client. *Id.* By May 12, 2016, CBA Plaintiffs determined litigation was necessary, and a litigation file was opened. *Id.* Notwithstanding the significant amount of work between September 8, 2015 through May 12, 2016 regarding the Mandate, counsel has eliminated that time. *Id.*

Third, counsel eliminated time spent by attorneys who worked little on the case. This included 42.3 hours for Deion Kathawa, 6.25 hours for Prof. Helen Alvaré, and 4.8 hours for Ed Gleason.

*Id.*; *see also* Ex. 1-C (showing total hours billed); Ex. 1-D (showing net hours billed after billing judgment deletions).

Fourth, counsel cut duplicative or nonproductive time or time not directly related to advancing the goals of the lawsuit. Nussbaum Decl. ¶ 18; *see also* Ex. 1-B (detailed billings, reflecting adjustments); *Dorr v. Weber*, 741 F. Supp. 2d 1022, 1030 (N.D. Iowa 2010) ("Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."). These hours include billing entries for internal meetings or entries that could be cut or reduced because, in hindsight, they may have taken longer than necessary to accomplish the relevant task. Nussbaum Decl. ¶ 18.

Counsel cut 243.25 hours or 10.4% of counsel's hours billed to the client in addition to the first and second cuts described above. Nussbaum Decl. at ¶¶ 18-20; Ex. 1-D (Net Hours Billed After Billing Judgment Deletions). Courts in the Eighth Circuit consistently find that reductions of this nature satisfy the billing-judgment requirement. *Glenn v. Astrue*, 2011 WL 2135454, at *3 (W.D. Mo. May 31, 2011); *U.S. ex rel. Rille v. Hewlett Packard Co.*, 2011 WL 4625646, at *3 (E.D. Ark. Oct. 5, 2011). After taking into account counsel's reasonable exercise of billing judgment, the Court should find that counsel's 2,100.75 hours to be reasonable.

**2.2. Counsel's hourly rates are reasonable.**

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). But in certain circumstances, out-of-town counsel will be entitled to a higher rate than the local rate. *See Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir.1982). "In a case where the plaintiff does not use local counsel, the court is not limited to the local hourly rate, if plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take

the case." *Emery*, 272 F.3d at 1048. In addition, attorneys specializing in complex areas of the law may be entitled to a higher, non-local rate. *See Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995). "To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel." *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 806 (8th Cir. 1993).

Here, no local counsel was available for this case. This is established by the declaration of North Dakota attorney Thomas B. Bair. *See* Ex. 2. Mr. Bair is a long-time North Dakota attorney, who has experience in litigation and transactional work, and most importantly has served as counsel for religious clients in North Dakota. *Id.* at ¶¶ 1-4. Mr. Bair states that no local attorney could have handled this case with the same level of expertise. *Id.* at ¶¶ 5-6. He knows of no "attorney or law firm in North Dakota that could have undertaken advocacy on the level of the Nussbaum firm in obtaining the result" here. *Id.* at ¶ 5. Mr. Bair states that this case "involve[s] a sophistication and expert understanding on many issues," including "religious liberty constitutional litigation, complex issues related to HHS regulations implementing the Affordable Care Act, litigation across the country related to those regulations, current EEOC interpretations of Title VII, Catholic ethics with regard to the emerging medical practice of assisting with gender transition, and federal court practice and procedure." *Id.* Because there was no local counsel available to handle this kind of civil-rights litigation, rates for similar kinds of national litigation are the appropriate yardstick here.

Non-local rates are also warranted because counsel are "leaders in the field with extensive experience." *Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014). Specialized religious-liberty expertise is crucial in litigating difficult cases involving the intersection of RFRA, the Affordable Care Act, and Title VII, and "there are only a handful of lawyers in the country with [this] experience

and expertise." Ex. 3 ¶ 9 (Baine Decl.). Kevin Baine, a leading Washington D.C. litigator at the firm of Williams & Connolly LLP, who has successfully litigated religious liberty disputes as lead counsel at all levels of the federal judiciary including at the Supreme Court states, "[o]ther than my own firm, Martin Nussbaum's firm and The Becket Fund for Religious Liberty [counsel for Plaintiffs in 16-cv-386] are the two sets of attorneys to whom I would look to handle this kind of case." *Id.* at ¶ 11. Indeed, CBA Plaintiffs' counsel has been recognized by Chambers and Partners in the area of First Amendment (Religious Liberty) Litigation nationwide. Ex. 1, Nussbaum Decl. ¶ 7. CBA Plaintiffs' counsel has litigated to victory key religious liberty cases involving the church-autonomy doctrine (*Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002)), the First Amendment privilege for statements made in a religious tribunal (*Purdum v. Purdum*, 301 P.3d 718, 720 (Kan. App. 2013)); the First Amendment protections for church property (*Harvest Worship Ctr. v. Resound Church*, 2023 WL 6377511, at *10 (D. Colo. Sept. 29, 2023)); the requirement of evenhanded treatment in public scholarship programs (*Colorado Christian Univ. v. Weaver*, 534 F.3d 1245, 1250 (10th Cir. 2008)); and the Religious Land Use and Institutionalized Persons Act (*Christian Growth Center v. Pueblo*, No. 22-cv-460 (D. Colo.)). And counsel regularly serves in an advisory role regarding religious liberty issues at the highest level, including to the United States Conference of Catholic Bishops. Nussbaum Decl. at ¶¶ 8, 10. Perhaps most importantly, counsel successfully obtained preliminary and permanent injunctive relief in similar litigation involving a challenge by CBA Plaintiffs to Defendants' "contraceptive" mandate. *Cath. Benefits Ass'n LCA v. Sebelius*, 24 F. Supp. 3d 1094 (W.D. Okla. 2014). As Mr. Baine states, "Other national major law firms would have the resources and staff needed to litigate a case like this, but

few if any of those firms would have the expertise and experience that Martin Nussbaum's firm has." Ex. 3, Baine Decl. ¶ 11.

Given this need for specialized, out-of-district counsel, the only remaining question is whether counsel's home rates are reasonable compared to what similar attorneys charge. *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993) ("A national market or a market for a particular legal specialization may provide the appropriate market."); *Dorr v. Weber*, 741 F. Supp. 2d 1022, 1033 (N.D. Iowa 2010) ("In specialized areas of law, such as civil rights, the national market may provide a reasonable hourly rate."). Counsel's actual rates are as follows:

| Timekeeper | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|
| Eric Kniffin ('03) | $355 | $370 | $395 | n/a | n/a | n/a | n/a | n/a |
| Matthew Mellema ('13) | $260 | $260 | n/a | n/a | n/a | n/a | n/a | n/a |
| Andrew Nussbaum ('16) | n/a | n/a | n/a | n/a | n/a | $400 | $410 | $425 |
| Martin Nussbaum ('85) | $510 | $510 | $550 | $560 | $575 | $585 | $595 | $595 |
| Ian Speir ('11) | $310 | $350 | $380 | $395 | $425 | $450 | $475 | $475 |
| Paralegals | $210 | $215 | n/a | $250 | $125 | $125 | $150 | $150 |

Nussbaum Decl. at ¶ 21 (attaching Exhibit 1-E, primary timekeepers' hourly rates).

The reasonableness of counsel's rate is usually established by "affidavits of comparable attorneys who attest to their rates and the reasonableness of the rates claimed." *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1192 (N.D. Iowa 2003), *aff'd,* 382 F.3d 816 (8th Cir. 2004). Here, Mr. Baine's declaration states that counsel's rates are reasonable for similar kinds of religious-liberty

11

litigation and are, in fact, much lower than comparable attorneys would charge. Ex. 3, Baine Decl. ¶¶ 11, 23, 24. Mr. Baine's rate in a case like this would have been $1,000, a junior partner's rate would have been $800, and a mid-level associate would have charged $550. *Id.* at ¶ 23. Counsel's rates are also reasonable in their home market of Colorado's front range. Troy Eid, a shareholder in the Denver office of Greenberg Traurig and the former United States Attorney for the District of Colorado attests that regional Colorado firms have recently been awarded fee awards based on rates ranging from $475 for associates to $885 for partners. Ex. 4 ¶ 25 (Eid Declaration). Mr. Eid's hourly rate is $935, and his associates charge between $550 and $850 per hour. *Id.* at ¶ 29. Because counsel's rates are substantially lower than rates charged by similar practitioners, their rates are reasonable.

Perhaps most importantly, in similar religious-liberty cases courts have awarded significantly higher rates. For example, in the *Franciscan Alliance* litigation, Plaintiffs requested $2,319,003.50 in attorney's fees, and the Court awarded 95% of that, $2,203,053.32, in a case granting injunctive relief against the HHS-aspect of the Mandate. *Franciscan All., Inc.*, 2023 WL 4462049, at *8. Notably, plaintiffs in *Franciscan Alliance* only obtained injunctive relief against HHS, not EEOC. The *Franciscan Alliance* court found reasonable rates of $860 and $1,000 in 2016, and $1,000 and $1,200 in 2020 for lawyers with 12 and 16 years of experience in 2016. *See* Pl. Mem. Supp. Mot. Award Att'y's Fees and Expenses, *Franciscan Alliance* v. *Beccerra,* No. 7:16-cv-00108-0, Exs. 1-E, 1-F (N.D. Tex. 2022); Ex. 1, Nussbaum Decl. ¶ 49.

Similarly, in *Intervarsity Christian Fellowship v. University of Iowa* and *Business Leaders in Christ v. University of Iowa*, the United States District Court for the Southern District of Iowa, sitting in Davenport, held that a public university violated the constitutional rights of religious student

organizations by selectively deregistering them based on their religious beliefs. The court awarded attorney's fees and found that a rate of $914/hour for a Becket Fund attorney with twenty-one years of experience and a rate of $759/hour for a Becket Fund attorney with thirteen years of experience was reasonable. *Intervarsity Christian Fellowship v. Univ. of Iowa*, No. 18-cv-80, ECF No. 101 at 2 n.1 (S.D. Iowa Nov. 18, 2021); *BLinC v. Univ. of Iowa*, No. 17-cv-80, ECF No. 147 at 3 (S.D. Iowa, Nov. 10, 2021). The court explained that "[a]lthough the rates requested for Plaintiff's out of state counsel are significantly higher, between $759 and $914 for the two attorneys, they are reasonable given the complex nature of the issues in this case and the extensive experience Plaintiff's counsel has in constitutional litigation." *BLinC*, No. 17-cv-80, ECF No. 147 at 3. And in this case, the Defendants settled with the Religious Sisters of Mercy Plaintiffs for $950,000 in fees. Ex. 1, Nussbaum Decl. ¶ 50. Notably, the Religious Sisters of Mercy Plaintiffs only won relief against HHS, whereas CBA Plaintiffs won relief against HHS *and* EEOC. Because the rates of counsel for CBA Plaintiffs are lower than those awarded in these similar cases, their rates are reasonable.

Finally, counsel are entitled to recover fees based on their current, 2023 billing rates, or an inflation-corrected amount. This is a matter of essential fairness: "Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *see also Planned Parenthood Minnesota v. Rounds*, 2006 WL 1889163, at *4 (D.S.D. July 7, 2006) ("Courts compensate for this delay either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."); *Tabech v. Gunter*, 869 F. Supp. 1446, 1462 (D. Neb. 1994) ("calculating the lodestar" by "using the current rates

I believe reasonable" thereby "compensate[ing] counsel for any delay in payment"). Counsel requests fees for all attorneys who did work on the case in 2023 at their 2023 rate. Ex. 1, Nussbaum Decl. at ¶ 25. For those attorneys who worked on the case in 2016 and 2017 but not thereafter, counsel requests, and has applied, a CPI inflation adjustment to their 2016 and 2017 rates. *Id.* at ¶ 26; *see also* Exs. 1-G, 1-H.

### 2.3. The lodestar amount is reasonable.

Based on the hours reasonably expended in this litigation and counsel's reasonable home rates, the lodestar amount is $1,022,378. *See* Ex. 1-H. As explained, these rates are reasonable.

After calculating the lodestar, courts move to the second stage and consider whether to enhance or reduce the award based on unaccounted *Johnson* factors. When considering the *Johnson* factors, this Court "has discretion to enhance a fee because of the public importance or other extraordinary feature of a case." *Avalon*, 689 F.2d at 140. And the Eighth Circuit has granted enhancements of 20% when a plaintiff achieved exceptional results and the case involved unusual complexity. *Taylor v. Jones*, 653 F.2d 1193, 1206 (8th Cir. 1981); *see also Shipes v. Trinity Indus.*, 46 F.3d 67 (5th Cir. 1995) (affirming 33% enhancement).

Counsel are not requesting any *Johnson* enhancement, although it would be well within the Court's discretion to award one. This case took seven years to litigate to completion. The issues involved include complex, cutting-edge questions regarding RFRA, Title VII, the ACA, the APA, and standing. Few lawyers and firms in the country have the requisite skill, experience, and willingness to tackle this kind of controversial case. The results were exceptional. See Ex. 1, Nussbaum Declaration at ¶¶ 31-46; Ex. 3, Baine Declaration at ¶¶ 10-15; Ex. 4 Eid Declaration at ¶¶ 15-21. The CBA Plaintiffs are permanently protected from ruinous fines—and they achieved first-in-the-nation relief against EEOC. The subject matter is intensely controversial, involving the conscience

rights of Catholic organizations regarding gender-transition procedures. Few, if any, large law firms would handle such controversial cases. And rates and awards in similar cases are substantially higher than those requested here.

3. **Plaintiffs' expenses are reasonable.**

Under 42 U.S.C. § 1988(b), a prevailing party may recover "[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee-paying client." *Associated Builders & Contractors, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 380 (5th Cir. 1990); *see also Houghton v. Sipco, Inc.*, 828 F. Supp. 631, 651 (S.D. Iowa 1993) (same), *vacated on other grounds*, 38 F.3d 953 (8th Cir. 1994).

Here, Plaintiffs seek costs totaling $4,340.80. That amount consists of $730.38 for airfare, $278.45 for ground transportation, $396.96 for lodging, $234.41 for meals, $1,290.65 for research, and $1,409.95 in court filing fees. The travel, meal, and lodging expenses are related to the December 15, 2021 oral argument before the Eighth Circuit. Nussbaum Decl. ¶ 17. The research costs were incurred in relation to the briefing and analysis before this Court and the Eighth Circuit. *Id.*

Plaintiffs also seek expenses totaling $37,693.50 in expert fees for their motion for attorney's fees. Nussbaum Decl. at ¶¶ 27-30. Given the substantial amount of professional fees being requested here, it was important to engage experts to provide testimony regarding the results and the reasonableness of rates and hours. *Id.* ¶¶ 26-28. Indeed, "affidavits of comparable attorneys who attest to their rates and the reasonableness of the rates claimed" is usually required to establish the reasonableness of an attorney's fees. *Baker*, 263 F. Supp. 2d at 1192. CBA Plaintiffs acknowledge there is a split of authority regarding whether a fee expert's fees are a recoverable expense. In this regard, the opinions in *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas*

15

*County.*, 278 F. Supp. 2d 1301, 1329 (M.D. Fla. 2003) and *American Atheists, Inc. v. City of Starke*, 509 F. Supp. 2d 1221, 1229 (M.D. Fla. 2007) are persuasive. In *American Charities*, the Court held that a fee expert's fees were a compensable expense because the defendants challenged the reasonableness of the requested rates and fees. 278 F. Supp. 2d at 1329. And in *American Atheists*, the Court ruled that a fee expert's fees were compensable because his services were necessary for plaintiff's motion for fees. 509 F. Supp. 2d at 1229. *But see Corral v. Montgomery Cnty.*, 91 F. Supp. 3d 702, 721 (D. Md. 2015) (holding expert fees are not compensable under 42 U.S.C. § 1988).

Accordingly, the Court should grant Plaintiffs' reasonable costs and expert expenses in the total amount of $42,034.30.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for attorney's fees of $1,022,378 and expenses of $42,034.30.

Respectfully submitted December 11, 2023,

/s/ *L. Martin Nussbaum*
L. Martin Nussbaum
Andrew Nussbaum
Nussbaum | Gleason PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
(719) 428-4937
martin@nussbaumgleason.com
andrew@nussbaumgleason.com
Attorneys for Plaintiffs The Catholic Benefits Association, *et al.*