## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| THE RELIGIOUS SISTERS OF MERCY, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>XAVIER BECERRA, Secretary of United States Department of Health and Human Services, *et al.,*<br><br>*Defendants.* | No. 3:16-cv-386 |
| THE CATHOLIC BENEFITS ASSOCIATION; *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>XAVIER BECERRA, Secretary of United States Department of Health and Human Services, *et al.,*<br><br>*Defendants.* | No. 3:16-cv-432 |

## DECLARATION OF KEVIN T. BAINE

I, Kevin T. Baine, hereby declare as follows:

1.      I am an attorney and Senior Counsel at Williams & Connolly LLP in Washington, D.C.  I submit this Declaration in support of the fee application filed by the attorneys for the Plaintiffs in the second of these consolidated cases—The Catholic Benefits Association, the Diocese of Fargo, Catholic Charities North Dakota, and the Catholic Medical Association (hereinafter "the CBA plaintiffs").

1

**I.    My Professional Background and Experience**

2.      I am admitted to practice and have appeared before the following courts: the

Supreme Court of the United States, the United States Courts of Appeals for the First, Second,

Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Federal Circuits; the United States District

Courts for the District of Columbia, District of Maryland, Southern District of New York, and

Northern District of New York; and the courts of the District of Columbia, New York, and

Maryland.  I have also been admitted *pro hac vice* in a number of other state courts.

3.      I received my Juris Doctor degree *magna cum laude* from the University of

Pennsylvania Law School in 1974.  I served as a law clerk in 1974-75 for Judge Edward

Weinfeld in the United States District Court for the Southern District for New York, and as a law

clerk in 1975-76 for Associate Justice Thurgood Marshall of the United States Supreme Court.

4.      I joined the law firm of Williams & Connolly as an associate in 1976.  I was a

partner in the law firm from January 1, 1981 until December 31, 2019, when I assumed the

position of Senior Counsel.

5.      My legal practice over the years has focused primarily on two areas:  freedom of

religion and freedom of the press.  I have advised and represented religious organizations in

numerous cases raising issues of religious freedom and church autonomy in state and federal

courts—including, for example, cases establishing that government funds may be used to provide

remedial instruction and instructional materials for the benefit of students in church-related

schools, *see, e.g., Agostini v. Felton,* 521 U.S. 203 (1997); *Walker v. San Francisco Unified*

*School District*, 46 F.3d 1449 (9th Cir. 1995); *Barnes v. Cavazos,* 966 F.2d 1056 (8th Cir. 1992)

(per curiam); *Pulido v. Cavazos,* 934 F.2d 912 (8th Cir. 1991); that a constitutionally-based

ministerial exception required dismissal of a pastor's age discrimination suit challenging a

church's mandatory retirement policy, *Hankins v. New York Annual Conference of United Methodist Church,* 351 F. App'x. 489 (2d Cir. 2009); that application of a county land use regulation preventing a church's expansion violated the Religious Land Use and Institutionalized Persons Act, *Rocky Mountain Christian Church v. Board of County Commissioners,* 613 F.3d 1229 (10th Cir. 2010); that the issuance of tax exempt bonds to finance construction of buildings for a church-related school did not violate the Establishment Clause, *Johnson v. Economic Development Corporation,* 241 F.3d 501 (6th Cir. 2001); and that a Catholic university had the right to remove a theology professor from its School of Religious Studies based on a declaration by the Pope that he was no longer eligible to teach Catholic Theology, *Curran v. Catholic University of America,* Civil Action No. 1562-87 (D.C. Superior Court, 1989).

6.    I have represented the interests of religious organizations in a number of cases in the United States Supreme Court. In 1997 I was lead counsel for a group of parents and students who successfully petitioned the United States Supreme Court to overrule an earlier decision holding that it was a violation of the Establishment Clause to use government funds to provide remedial instruction to economically and educationally deprived students on the premises of church-related schools. *Agostini v. Felton, supra.* In a case claiming that the group tax exemption granted to Catholic entities throughout the country should be revoked because some Catholic entities had allegedly violated the restriction against political activity, I successfully argued that the United States Catholic Conference could resist a subpoena for records on the ground that the plaintiff lacked standing to bring the underlying case—a position that ultimately led to the dismissal of the case. *See U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72 (1988); *U.S. Catholic Conference v. Baker (In re U.S. Catholic Conference),* 885 F.2d 1020 (2d Cir. 1989). Twice I petitioned the Supreme Court to reverse state Supreme

Court rulings rejecting constitutional challenges to state laws requiring Catholic Charities to include contraceptives in their employee prescription drug plans. *See Catholic Charities of Sacramento, Inc. v. Superior Court,* 85 P.3d 67, *cert. denied,* 125 S. Ct. 53 (Cal. 2004); *Catholic Charities of the Diocese of Albany v. Serio,* 859 N.E.2d 459 (N.Y. 2006), *cert. denied sub nom. Catholic Charities of Diocese of Albany v. Dinallo,* 552 U.S. 816 (2007). Those petitions were denied, but similar arguments were later accepted by the Supreme Court, applying the Religious Freedom Restoration Act, in *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 (2014), a case in which I filed a Brief *Amicus Curiae.* I also filed a Brief *Amicus Curiae* in the case in which the Supreme Court held that the First Amendment required recognition of a ministerial exception to employment discrimination laws. *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC,* 565 U.S. 171 (2012).

7.    In addition to the work I have done in the area of religious freedom, I have served as lead counsel in numerous cases involving freedom of the press and freedom of speech in state and federal courts around the country. *See, e.g., Blankenship v. NBC Universal, LLC,* 60 F.4th 744 (4th Cir. 2023), *cert. denied,* No. 22-1125, 2023 WL 6558383 (U.S. Oct. 10, 2023); *Speech First, Inc. v. Schlissel,* 939 F.3d 756 (6th Cir. 2019); *Virginia Citizens Defense League v. Couric,* 910 F.3d 780 (4th Cir. 2018); *Abbas v. Foreign Policy Group, LLC,* 783 F.3d 1328 (D.C. Cir. 2015); *Marshall County Coal Co. v. Oliver,* 2017 U.S. Dist. LEXIS 2324398 (N.D.W. Va., Aug. 10, 2017).

## II.    Reasonableness of the Attorneys' Fees Requested

8.    I have been asked to provide my opinion of the reasonableness of the hourly rates requested in the fee petition submitted by the attorneys for the CBA plaintiffs in this case and on the number of hours spent by those attorneys in bringing the case to a successful conclusion.

Relevant to those questions is an assessment of the complexity of the case, the experience and expertise of counsel, and the quality of counsel's representation and advocacy. I have reviewed the district court dockets in the consolidated cases and the following materials in particular: the Second Amended Complaint, the motion for a temporary restraining order, the government's motion to dismiss, the motion for summary judgment and permanent declaratory and injunctive relief, the briefs on appeal, and the opinions of the district court and the court of appeals in the case. *Religious Sisters of Mercy v. Becerra,* 55 F.4th 583 (8th Cir. 2022), *aff'g in part sub nom Religious Sisters of Mercy v. Azar,* 513 F. Supp.3d 1113 (D.N.D. 2021).

9.      My opinions, as more fully explained below, are that this case involved difficult and complicated issues of religious freedom, standing, and ripeness that required the attention of counsel with knowledge and experience in those areas; that Martin Nussbaum and his colleagues are uniquely qualified by virtue of their experience to address those issues; that there are only a handful of lawyers in the country with the experience and expertise that they possess in the area of religious freedom; that these attorneys provided representation and advocacy of the highest level; that the hourly rates for which they seek recovery are not only reasonable for lawyers of their skill and experience, but considerably lower than the hourly rates charged by others with comparable skill and experience; and that the number of hours spent by counsel was reasonable given the challenges and complexity of the case.

**A. Complexity of the Case**

10.      Plaintiffs in this case successfully invoked the Religious Freedom Restoration Act to establish their right to an exception from statutory and regulatory requirements that they cover gender transition services in their health plans. They secured declaratory and injunctive relief against implementation of a regulation implementing the Affordable Care Act ("ACA") that

5

would have required them to provide those services. They also secured the same relief against the EEOC and its interpretation of Title VII to require employers with fifteen or more employees to cover gender transition services in their health plans.

11.    There are only a handful of attorneys in the United States with substantial experience and expertise litigating the kinds of issues that were presented in this case. Other than my own firm, Martin Nussbaum's firm and The Becket Fund for Religious Liberty are the two sets of attorneys to whom I would look to handle a case of this kind. Other national major law firms would have the resources and staff needed to litigate a case like this, but few if any of those firms would have the expertise and experience that Martin Nussbaum's firm has, and the hourly rates charged by those firms would be considerably higher than the rates charged by Mr. Nussbaum and his colleagues.

12.    This case required familiarity with the body of law that exists under the Religious Freedom Restoration Act and the First Amendment relating to what constitutes a substantial burden on the exercise of religion and what constitutes a compelling governmental interest sufficient to justify a substantial burden on religious exercise. Those issues are complicated and often hotly contested, as evidenced by the opposing arguments advanced by the American Civil Liberties Union in this case.

13.    This case also required familiarity with, and expertise related to, the principles of standing and ripeness as they have been developed by the Supreme Court. I have litigated issues of standing before the Supreme Court and the federal courts of appeals. *See Abortion Rights Mobilization, Inc.,* 487 U.S. 72; *In re U.S. Catholic Conference,* 885 F.2d 1020; *Speech First, Inc.,* 939 F.3d 756. Standing issues are complicated and often do not admit of easy resolution, as

evidenced by the fact that in the cases just cited, district court decisions on standing were reversed by the courts of appeals.

14.    This case was complicated by an ever-shifting administrative landscape. I note that the government sought continued stays of these proceedings no less than twelve times because of ongoing administrative proceedings. Plaintiff's counsel had to analyze the effect of material changes to the applicable regulations.

15.    Finally, litigation of this case was complicated by the need to monitor and analyze the effect of other ongoing litigation—including the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (U.S. 2020), and the decisions in other cases involving similar legal challenges. *See, e.g., Franciscan Alliance, Inc. v. Becerra,* 47 F.4th 368 (5th Cir. 2022), *aff'g in part Franciscan Alliance, Inc. v. Becerra,* 553 F.Supp.3d 361 (N.D. Tex. 2021); *Franciscan Alliance, Inc. v. Azar,* 414 F. Supp. 3d 928 (N.D. Tex. 2019); *Franciscan Alliance, Inc. v. Burwell,* 227 F. Supp. 3d 660 (N.D. Tex. 2016); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.,* 485 F. Supp.3d 1 (D.D.C. 2020); *Washington v. U.S. Dep't of Health & Human Servs.,* 482 F. Supp. 3d 1104 (W.D. Wash. 2020); *Boston Alliance of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.,* 557 F. Supp.3d 224 (D. Mass. 2021); *Walker v. Azar*, 480 F. Supp.3d 417 (E.D.N.Y. 2020).

**B.  Experience and Expertise of Counsel**

16.    Based on my experience, and based on my familiarity with the experience and expertise of Mr. Nussbaum and his colleagues, I can say without reservation that they were uniquely qualified to advance the interests of their clients in this case and to assist the Court in reaching a just resolution.

17.    The counsel who worked on this matter for the CBA plaintiffs are highly qualified and experienced in litigating cases involving religious freedom.

a.    L. Martin Nussbaum received his B.A. degree *summa cum laude* in 1974 from the University of Notre Dame and his J.D. degree with Academic Distinction in 1985 from the University of Texas Law School.  He has been counsel for religious institutions in dozens of cases over the past four decades, and he has written and presented extensively on a variety of subjects related to the religious freedom of individuals and institutions.  He is, without question, one of the leading attorneys in the country when it comes to the defense of religious freedom against governmental intrusion.

b.    Ian Speir has worked on this case since its inception with Martin Nussbaum.  He received his J.D. *magna cum laude* from the Georgetown University Law Center in 2011 and clerked for Judge Jerome Holmes on the United States Court of Appeals for the Tenth Circuit in 2011-12.  His law practice since then has focused on the representation of religious organizations and religious freedom, and he has taught courses on the First Amendment and the Constitution to undergraduates at the University of Colorado.

c.    Eric Kniffin , who worked on  this case from 2016 to 2018, is a 2003 *cum laude* graduate of the University of Notre Dame Law School.  He clerked for Judge Theresa Springman in the United States District Court for the Northern District of Indiana.  He spent 4 years at the Department of Justice, where some of his experience involved litigation under the Religious Land Use and Institutionalized Persons Act, which is similar to the law at issue in this case, the Religious Freedom Restoration Act.  Mr. Kniffin then spent five years as legal counsel for The Becket Fund for Religious Liberty, where he represented clients in high-profile religious liberty at trial, on appeal, and at the Supreme Court.  He continued that work until early this year

as a partner at Lewis Roca.  When he began his work on this case, he had roughly ten years of experience in matters involving religious liberty.

        d.      Andrew Martin Nussbaum received his J.D. *summa cum laude* from the Tulane University Law School in 2016, graduating first in his class.  He has clerked for Judge Daniel Domenico of the United States District Court for the District of Colorado and Judge William Pryor of the United States Court of Appeals for the Eleventh Circuit.  He worked as an associate for over two years at a leading national law firm, Hogan Lovells US LLP, and has been a partner since 2021 at Nussbaum Gleason PLLC, where he has worked on this case and other cases involving issues of religious liberty.

18.     In sum, each of the attorneys for the CBA plaintiffs has focused on issues of religious liberty in his legal practice, and together they provided a level of expertise and experience in the area that made them uniquely qualified to represents the interests of their clients in this litigation.  One sees evidence of their expertise and experience in the sophistication and compelling clarity of the arguments advanced in their briefs in this case.

**C.  Hourly Rates and Hours Billed**

19.     I am familiar with the billing rates at my firm for attorneys involved in federal court litigation at the trial and appellate levels.  I am also generally familiar with the billing rates charged by attorneys at other major firms in complex litigation, which I consider this case to be.

20.     I have reviewed the billing rates for which the attorneys for the CBA plaintiffs seek recovery in this case.  In my opinion, those rates are reasonable for lawyers with the skill and experience that they brought to bear in the case.

21.     The hourly rates sought in this petition are as follows:

**PRIMARY TIMEKEEPERS' ACTUAL HOURLY RATE BY YEAR**

| Timekeeper | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|
| Eric Kniffin (2003) | $355 | $370 | $395 | n/a | n/a | n/a | n/a | n/a |
| Matthew Mellema (2013) | $260 | $260 | n/a | n/a | n/a | n/a | n/a | n/a |
| Andrew Nussbaum (2016) | n/a | n/a | n/a | n/a | n/a | $400 | $410 | $425 |
| Martin Nussbaum (1985) | $510 | $510 | $550 | $560 | $575 | $585 | $595 | $595 |
| Ian Speir (2011) | $310 | $350 | $380 | $395 | $425 | $450 | $475 | $475 |
| Paralegals | $210 | $215 | n/a | $250 | $125 | $125 | $150 | $150 |

22.     These rates are very reasonable considering the experience and expertise of counsel. At the time that he was billing at the hourly rate of $355 (2016), Mr. Kniffin had 13 years of experience. Ian Speir had over ten years of experience when he was billing at a rate of $475 in 2023. Andrew Nussbaum had five years of experience when he was billing at $400 in 2021. Martin Nussbaum had over 20 years of experience, and was recognized as one of the leading lawyers in the country in this area, when he was billing at $510 in 2016.

23.     The rates requested by these attorneys are considerably lower than the rates that my firm and other major law firms would have charged in this case. My current hourly rate is $1,550 per hour. My firm provides a discount of as much as 35% to religious, non-profit organizations that I represent in litigation. That brings my current hourly rate down to $1,000 per hour for cases like this one, and that is the rate at which I am being compensated to prepare

this declaration. With similar discounts, the current hourly rates of a junior partner in my firm would be approximately $800 and that of a mid-level associate would be approximately $550.

24.    The hourly rates at my firm are in line with the hourly rates of other national law firms with the resources, staff, and complex litigation experience required to handle a case like this one.

25.    Cases involving legal challenges to federal regulations are often brought in the United States District Court for the District of Columbia. The Department of Justice has developed a matrix of hourly rates, by years of experience, to assist with resolving requests for attorney's fees in complex civil cases that are handled by the Civil Division of the United States Attorney's Office for the District of Columbia. *See* Ex. A to this Declaration. The hourly rates reflected in that matrix—known as the Fitzpatrick Matrix—are considerably higher than the actual hourly rates charged by the attorneys in this case. For the years 2021-2023, for example, a comparison of the hourly rates charged in this case with the hourly rates approved in the Fitzpatrick Matrix, by years of experience, shows the following:

| Martin Nussbaum | Rate Charged | Fitzpatrick Matrix |
|---|---|---|
| 2021 (26 years) | $585 | $708 |
| 2022 (27 years) | $595 | $736 |
| 2023 (28 years) | $595 | $787 |
| Ian Speir | | |
| 2021 (10 years) | $450 | $570 |
| 2022 (11 years) | $475 | $601 |
| 2023 (12 years) | $475 | $652 |
| Andrew Nussbaum | | |
| 2021 (5 years) | $400 | $504 |
| 2022 (6 years) | $410 | $535 |
| 2023 (7 years) | $425 | $584 |

As this comparison shows, the rates approved by the Justice Department for complex civil litigation in the District of Columbia are higher than the rates charge by the attorneys in this case by a factor of 20% or more in 2021 and 30% or more in 2023.

26.    The hourly rates sought in this case are considerably lower than the rates that have been sought and recovered by The Becket Fund in in similar cases.

a.    Earlier this year, the United States District Court for the Northern District of Texas awarded The Becket Fund over $2 million in attorneys' fees for their work in a RFRA case very similar to this one, in which injunctive relief was entered against the HHS rule requiring the provision of abortion and gender transition services. *Franciscan Alliance v. Beccerra*, No. 7:16-cv-00108-O, 2023 WL 4462059, at *9 (N.D. Tex. 2023). The Court found that the case, which (like this one) involved a claimed "right to a religious exemption," was "a highly complex case" requiring counsel from outside the area "with specialized experience." *Id.* at *7-8. It therefore awarded fees based on rates in Washington, D.C., where The Becket Fund is located. For lawyers with 12 and 16 years of experience in 2016, the court approved rates $860 and $1,000 in 2016, and $1,000 and $1,200 in 2020. *See* Pl. Mem. Supp. Their Mot. Award Att'y's Fees and Expenses, *Franciscan Alliance v. Beccerra,* No. 7:16-cv-00108-O, Exs. 1-E, 1-F, 2(¶20) (N.D. Tex. Dec. 23, 2022). Those lawyers had roughly half the 31 years of experience that Martin Nussbaum had in 2016. Yet the rates that they recovered were as much as two times the rate sought by Martin Nussbaum in this case ($510 in 2016 and $575 in 2020).

b.    In 2021, the United States District Court for the Southern District of Iowa awarded attorneys' fees to The Becket Fund in a case in which they had successfully argued that a public university had violated the constitutional rights of religious student organizations by selectively deregistering them based on their religious beliefs. The court approved hourly rates

of $914 for an attorney with 20 years of experience (Eric Baxter) and $759 for an attorney with 13 years of experience (Daniel Blomberg). *Intervarsity Christian Fellowship v. Univ. of Iowa,* No. 18-cv-80, Dkt. No. 101 (S.D. Iowa Nov. 18, 2021); *Business Leaders in Christ v. Univ. of Iowa,* No. 17-cv-80, Dkt. No. 147 (S.D. Iowa Nov. 10, 2021). The Court found that those rates were "reasonable given the complex nature of the issues in this case and the extensive experience Plaintiff's counsel has in constitutional litigation." *Business Leaders, supra,* at 3. Again, the rates approved as reasonable in those cases are much higher than the rates sought by the attorneys with comparable experience in this case ($510-$595 for Martin Nussbaum based on 21-28 years of experience, and $355-$395 for Eric Kniffin based on 13-15 years of experience).

27.    The hourly rates sought in this case are in line with hourly rates that have been approved in fee awards in other cases involving successful constitutional challenges in courts across the country. For example:

a.    In in an excessive force case tried in 2021 in the United States District Court for the District of Colorado, the United States Court of Appeals for the Tenth Circuit upheld hourly rates of $575 and $595 for partner-level attorneys with "decades of criminal and civil trial experience" but no apparent expertise in civil rights litigation, and $375 hours for associates with roughly a decade of experience. *Valdez v. MacDonald,* 66 F.4th 796, 838, 840-41 (10th Cir. 2023).

b.    In a case establishing the unconstitutional vagueness of a city's permitting process, the United States District Court for the Northern District of California approved hourly rates of $550 to $800 for lawyers with experience ranging from 15 years to 40 years. *Zeleny v. Becerra,* No. 17-cv-07357-RS, 2022 WL 562824, at *3 (N.D. Cal. Feb. 24, 2022), *appeal*

13

*dismissed sub nom. Zeleny v. City of Menlo Park*, No. 22-15449, 2022 WL 4459901 (9th Cir.,

May 6, 2022).

      c.  In a case of unlawful arrest and excessive force, the United States District Court

for the Southern District of New York in 2021 awarded fees at an hourly rate of $500 to a lawyer

with more than 20 years of experience in civil rights cases, and $400 to a lawyer with four years

of experience as an Assistant District Attorney and five years of experience in civil rights cases.

*Field v. Metropolitan Transportation Authority,* No. 20-cv-928 (RA), 2021 WL 22817 (S.D.N.Y.

Jan. 4, 2021).

      d.  In a case establishing that correctional officers' deliberate indifference to an

inmate's medical needs violated the Constitution, the United States District Court for the Middle

District of Alabama in 2020 awarded $300,000 in fees based on a 50% contingency fee

arrangement, even though that was more than 5 times the fee that would have resulted from

lodestar rates of $500 and $400 per hour for the two attorneys in the case. *Casey v. Gartland,*

No. 2:18cv890-MHT, 2020 WL 4470444 (M.D. Ala. Aug. 4, 2020).

      e.  In a case successfully challenging the constitutionality of a Michigan law

eliminating straight-ticket voting 2019, the United States District Court for the Eastern District of

Michigan approved an hourly rate of $500 for two lead counsel with 35 and 44 years of

experience. *Mich. State A. Philip Randolph Inst. v. Johnson,* No. 16-cv-11844, 2019 WL

2314861, at *5-7 (E.D. Mich., Southern Div., May 31, 2019).

      f.  In a Fifth Amendment takings case, the United States Court of Federal Claims

approved fees for work in 2016-17 based on a matrix utilized by the United States Attorney's

Office at the time: $543-$581 for attorneys with 20+ years of experience, $465-516 for attorneys

with 11-19 years of experience, and $395 for attorneys with 8-10 years of experience. *McCarty v. United States,* 142 Fed. Cl. 616, 624 (Ct. Cl. 2019).

      g.  In a false arrest/excessive use of force case in 2017, the United States District Court for the Southern District of New York awarded hourly rates of $625 for the experienced (27 years) civil rights attorney who tried the case, $550 for an experienced lawyer who assisted in preparing the case and observed the trial, and $500 for a 14-year associate who had participated in the trial. *Alicea v. City of New York,* 272 F. Supp.3d 603 (S.D.N.Y. 2017).

      h.  In a case of false arrest, the United States District Court for the Eastern District of Virginia in 2012 held that rates of $585 for experienced lead counsel and $365 for a senior associate were reasonable. *McAfee v. Boczar,* 906 F. Supp.2d 484 (E.D. Va. 2012).

      i.  In a case involving a successful First Amendment challenge to ordinances regulating vending and expressive activity on a beach boardwalk and a city council's rules of decorum, the United States District Court for the Central District of California in 2014 awarded attorney's fees at hourly rates of $775 for a lawyer with significant experience litigating First Amendment cases during his four 43 years of practice; $675 for a lawyer with 35 years of experience including 26 years assisting in litigating First Amendment cases; $375 for a lawyer with five year of experience; and $200 for an attorney with less than one year of experience. *Dowd v. City of Los Angeles,* 28 F. Supp.3d 1019, 1052-58 (C.D. Cal. 2014).

      j.  In a case challenging a warrantless search, the United States District Court for the District of Minnesota in 2014 approved rates of $450 for an attorney with over 20 years of experience and $225 for an attorney with three years of experience. *Rosen v. Wentworth,* 13 F. Supp. 3d 944, 951 (D. Minn. 2014).

k.   In a case in which counsel achieved a settlement of a claim challenging delays in hearings afforded to subjects of child abuse allegations, the United States District Court for the Southern District of New York in 2012 awarded fees of $450 per hour to a lawyer with 42 years of experience at a small firm who did most of the work by himself, including work that would be done by junior associates at other firms. *Finch v. N.Y. State Office of Child. & Fam. Servs,* 861 F. Supp. 2d 145, 153-54 (S.D.N.Y. 2012).

l.   In a §1983 case against the District of Columbia and a group home, the United States District Court for the District of Columbia in 2013 awarded fees based on the matrix then in use in civil cases in the District (the *Laffey* Matrix): $445 per hour for an attorney with 17-19 years of experience, and $505 per hour for attorneys with more than 20 years of experience. *Harvey v. Mohammed,* 951 F. Supp. 2d 47, 55-56 (D.D.C. 2013).

m.   In an excessive force case tried in 2012, the United States District Court for the Northern District of Illinois approved hourly rates of $535 for lead counsel, "a highly accomplished trial attorney"; $450 for a litigator with "impressive credentials and experience" in areas other than civil rights; and $225 for a second-year associate. *Winston v. O'Brien,* 951 F. Supp. 2d 1004, 1007, 1009 (N.D. Ill. 2013).

n.   In a case involving a successful First Amendment challenge to a state law that allowed physicians to opt out of providing prescribing information to intermediaries, the United States District Court for the District of Maine, recognizing the need to hire counsel from outside the district, approved hourly rates for partners based in the District of Columbia, Florida, and North Carolina under the District of Columbia-based *Laffey* Matrix: $440-495 for work performed in 2007-2011.   *IMS Health Corp. v. Schneider,* 901 F. Supp. 2d 172, 196 (D. Me. 2012).

28.     In sum, the hourly rates requested by counsel for the CBA plaintiffs in this fee petition are lower than the rates that would have been charged by my firm and other major national firms, lower than the rates awarded to The Becket Fund in other cases, and well within the range of fees awarded in other cases involving the vindication of constitutional rights. Considering the experience, expertise, and skill of the counsel involved, the hourly rates requested in this matter are, in my opinion, quite reasonable.

29.     I have reviewed the billing records of the lawyers in this case through the end of September 2023. Those records reflect some downward adjustments that I understand have been made to account for inefficiency or duplication of effort. I make similar adjustments in the bills that I prepare for clients. The resulting hours for which compensation is being sought appear reasonable to me in light of the complexity of the issues and the length and complexity of the litigation.

30.     There are only three attorneys for these Plaintiffs who have devoted more than 100 hours to the case in the 7 years that it was pending—Eric Kniffin (731 hours, mostly in 2016 and 2017, when he carried most of the load); Ian Speir (669 hours through the end of September) and Martin Nussbaum (625 hours through the end of September). To me this indicates that there was not any unnecessary duplication of effort. Significantly, in 2020 and 2021, when the lawyers briefed and argued the appeal and the motion for summary judgment and permanent declaratory and injunctive relief, there were only two lawyers who spent any considerable time on the matter (a third spent a total of 4 hours), and those two lawyers billed a total of 516 hours. This is a reasonable number of hours for the substantial effort that went into those briefs and arguments.

17

31.    In sum, it is my opinion that the number of hours for which counsel seek compensation is reasonable given the length and complexity of the litigation.

**D. Conclusion**

32.    For the foregoing reasons, it is my opinion that the hours and hourly rates claimed in the petition are reasonable given the qualifications and skill of the attorneys, the need for counsel with the experience and expertise that they brought to bear, the opposition that they faced, the length and complexity of the issues, and the result that they achieved.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Kevin T. Baine

Date: December 4, 2023

# EXHIBIT A

## THE FITZPATRICK MATRIX
Hourly Rates ($) for Legal Fees for Complex Federal Litigation in the District of Columbia

| Years Exp. / Billing Yr. | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 35+ | 535 | 563 | 591 | 619 | 647 | 675 | 703 | 731 | 736 | 760 | 807 |
| 34 | 534 | 562 | 590 | 618 | 646 | 674 | 702 | 729 | 734 | 758 | 805 |
| 33 | 532 | 560 | 588 | 616 | 644 | 672 | 700 | 728 | 733 | 757 | 804 |
| 32 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 726 | 730 | 754 | 801 |
| 31 | 527 | 555 | 583 | 611 | 639 | 667 | 695 | 723 | 728 | 752 | 799 |
| 30 | 524 | 552 | 580 | 608 | 636 | 664 | 692 | 720 | 725 | 749 | 795 |
| 29 | 521 | 549 | 577 | 605 | 633 | 661 | 689 | 717 | 721 | 745 | 791 |
| 28 | 517 | 545 | 573 | 601 | 629 | 657 | 685 | 713 | 717 | 741 | 787 |
| 27 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 708 | 713 | 736 | 782 |
| 26 | 508 | 536 | 564 | 592 | 620 | 648 | 676 | 704 | 708 | 731 | 776 |
| 25 | 502 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 703 | 726 | 771 |
| 24 | 497 | 525 | 553 | 581 | 609 | 637 | 665 | 693 | 697 | 720 | 765 |
| 23 | 491 | 519 | 547 | 575 | 603 | 630 | 658 | 686 | 691 | 714 | 758 |
| 22 | 484 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 684 | 707 | 751 |
| 21 | 477 | 505 | 533 | 561 | 589 | 617 | 645 | 673 | 677 | 699 | 742 |
| 20 | 470 | 498 | 526 | 553 | 581 | 609 | 637 | 665 | 670 | 692 | 735 |
| 19 | 462 | 490 | 518 | 546 | 574 | 602 | 630 | 658 | 662 | 684 | 726 |
| 18 | 453 | 481 | 509 | 537 | 565 | 593 | 621 | 649 | 653 | 675 | 717 |
| 17 | 445 | 473 | 500 | 528 | 556 | 584 | 612 | 640 | 645 | 666 | 707 |
| 16 | 435 | 463 | 491 | 519 | 547 | 575 | 603 | 631 | 635 | 656 | 697 |
| 15 | 426 | 454 | 482 | 510 | 538 | 566 | 593 | 621 | 626 | 647 | 687 |
| 14 | 416 | 443 | 471 | 499 | 527 | 555 | 583 | 611 | 615 | 635 | 674 |
| 13 | 405 | 433 | 461 | 489 | 517 | 545 | 573 | 601 | 605 | 625 | 664 |
| 12 | 394 | 422 | 450 | 478 | 506 | 534 | 562 | 590 | 594 | 614 | 652 |
| 11 | 382 | 410 | 438 | 466 | 494 | 522 | 550 | 578 | 582 | 601 | 638 |
| 10 | 371 | 399 | 427 | 455 | 483 | 510 | 538 | 566 | 570 | 589 | 625 |
| 9 | 358 | 386 | 414 | 442 | 470 | 498 | 526 | 554 | 558 | 576 | 612 |
| 8 | 345 | 373 | 401 | 429 | 457 | 485 | 513 | 541 | 545 | 563 | 598 |
| 7 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 528 | 532 | 550 | 584 |
| 6 | 319 | 347 | 375 | 403 | 431 | 458 | 486 | 514 | 518 | 535 | 568 |
| 5 | 305 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 504 | 521 | 553 |
| 4 | 290 | 318 | 346 | 374 | 402 | 430 | 458 | 486 | 489 | 505 | 536 |
| 3 | 275 | 303 | 331 | 359 | 387 | 415 | 443 | 471 | 474 | 490 | 520 |
| 2 | 260 | 287 | 315 | 343 | 371 | 399 | 427 | 455 | 458 | 473 | 502 |
| 1 | 244 | 272 | 300 | 328 | 356 | 384 | 412 | 439 | 442 | 457 | 485 |
| 0 | 227 | 255 | 283 | 311 | 339 | 367 | 395 | 423 | 426 | 440 | 467 |
| P* | 130 | 140 | 150 | 160 | 169 | 179 | 189 | 199 | 200 | 207 | 220 |

* = Paralegals/Law Clerks

*Published by the U.S. Attorney's Office for the District of Columbia, Civil Division*

## Explanatory Notes

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared to assist with resolving requests for attorney's fees in complex civil cases in District of Columbia federal courts handled by the Civil Division of the United States Attorney's Office for the District of Columbia. It has been developed to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]," as the United States Court of Appeals for the District of Columbia Circuit urged. *DL v. District of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019). The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, nor has it been adopted by other Department of Justice components.

2. The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees. *E.g.*, 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b). A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The matrix is not intended for use in cases in which the hourly rate is limited by statute. *E.g.*, 28 U.S.C. § 2412(d).

3. For matters in which a prevailing party agrees to payment pursuant to this fee matrix, the United States Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires. *See, e.g., Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (requiring "evidence that [the] 'requested rates are in line with those prevailing in the community for similar services'")).

4. The years in the column on the left refer to an attorney's years of experience practicing law. Normally, an attorney's experience will be calculated based on the number of years since an attorney graduated from law school. If the year of law school graduation is unavailable, the year of bar passage should be used instead. Thus, an attorney who graduated from law school in the same year as the work for which compensation is sought has 0 years of experience. For all work beginning on January 1 of the calendar year following graduation (or bar admission), the attorney will have 1 year of experience. (For example, an attorney who graduated from law school on May 30 will have 0 years of experience until December 31 of that same calendar year. As of January 1, all work charged will be computed as performed by an attorney with 1 year of experience.) Adjustments may be necessary if an attorney did not follow a typical career progression or was effectively performing law clerk work. *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate).

5. The data for this matrix was gathered from the dockets of cases litigated in the U.S. District Court for the District of Columbia using the following search in July 2020 in Bloomberg Law: keywords ("motion n/5 fees AND attorney!") + filing type ("brief," "motion," or "order") + date ("May 31, 2013 – May 31, 2020" under "Entries (Docket and Documents)"). This returned a list of 781 cases. Of those, cases were excluded if there was no motion for fees filed, the motions for fees lacked necessary information, or the motions involved fees not based on hourly rates, involved rates explicitly or implicitly based on an existing fee matrix, involved rates explicitly or implicitly subject to statutory fee caps (e.g., cases subject to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)), or used lower rates prescribed by case law (*e.g., Eley*, 793 F.3d at 105 (Individuals with Disabilities in Education Act

cases)).  After these excisions, 86 cases, many of which included data for multiple billers (and 2 of which only provided hourly rate data for paralegals), remained.

6.  The cases used to generate this matrix constitute complex federal litigation—which caselaw establishes as encompassing a broad range of matters tried in federal court.  *E.g.*, *Reed v. District of Columbia*, 843 F.3d 517, 527-29 (D.C. Cir. 2016) (Tatel, J., concurring) (noting that cases arising under the Freedom of Information Act, Title VII, the Americans with Disabilities Act, Constitutional Amendments, antitrust statutes, and others have been deemed complex, and even "relatively small" cases can constitute complex federal litigation, as they too require "specialized legal skills" and can involve "complex organizations," such as "large companies"); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14-16, 17 (D.D.C. 2008) (prevailing market rates for complex federal litigation should be determined by looking to "a diverse range of cases").  That the attorneys handling these cases asked the court to award the specified rates itself demonstrates that the rates were "'adequate to attract competent counsel, [while] not produc[ing] windfalls to attorneys.'"  *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  As a consequence, the resulting analysis yields the "prevailing market rate[] in the relevant community" for complex litigation undertaken in federal courts in the District of Columbia. *See Blum*, 465 U.S. at 895.

7.  From these 86 complex federal cases, the following information was recorded for 2013 and beyond: hourly rate, the calendar year the rate was charged, and the number of years the lawyer was out of law school when the rate was charged (or, if law school graduation year was unavailable, years since bar passage), as defined above.  If the graduation or bar passage year was not stated in a motion or its exhibits, then the lawyer's biography was researched on the internet.  Although preexisting fee matrices for the District of Columbia provide for mid-year rate changes, very few lawyers in the data submitted rates that changed within a calendar year.  For this reason, the matrix was modeled using one rate for each calendar year.  On the occasions when a lawyer expressed an hourly rate as a range or indicated the rate had increased during the year, the midpoint of the two rates was recorded for that lawyer-year.

8.  The matrix of attorney rates is based on 675 lawyer-year data points (one data point for each year in which a lawyer charged an hourly rate) from 419 unique lawyers from 84 unique cases.  The lawyer-year data points spanned from years 2013 to 2020, from $100 to $1250, and from less than one year of experience to 58 years.

9.  Paralegal/law clerk rates were also recorded.  The following titles in the fee motions were included in the paralegal/law clerk data: law clerk, legal assistant, paralegal, senior legal assistant, senior paralegal, and student clerk.  The paralegal/law clerk row is based on 108 paralegal-year data points from 42 unique cases.  They spanned from 2013 to 2019 and from $60 to $290.  (It is unclear how many unique persons are in the 108 data points because paralegals were not always identified by name.)

10.  The matrix was created with separate regressions for the lawyer data and the paralegal data.  For the paralegal data, simple linear least-squares regression was used with the dependent variable hourly rate and the independent variable the year the rate was charged subtracted from 2013; years were

combined into one variable and subtracted from 2013 rather than modeled as separate indicator variables to constrain annual inflation to a constant, positive number. The resulting regression formula was rate = 129.8789 + 9.902107 * (year-2013). For the lawyer data, least-squares regression was used with the dependent variable hourly rate and independent variables the year the rate was charged and the number of years of experience of the lawyer when the rate was charged. The year the rate was charged was subtracted from 2013 and modeled linearly as with the paralegal data. The number of years out of law school (or since year of bar passage) was modeled with both linear and squared terms, as is common in labor economics to account for non-linear wage growth (e.g., faster growth earlier in one's career than at the end of one's career). *See, e.g.*, Jacob Mincer, *Schooling, Experience, and Earnings* (1974). The resulting regression formula was rate = 227.319 + 16.54492 * experience - 0.2216217 * experience ^ 2 + 27.97634 * (year-2013). Regressions were also run with log transformed rates and with a random-effect model (to account for several lawyers appearing more than once in the data), but both alternatives resulted in mostly lower rates than those reflected here; in order to minimize fee disputes, these models were therefore rejected in favor of the more generous untransformed, fixed-effect model. Rates from one case comprised 20% of the data; the regression was also run without that case, but the resulting rates were mostly lower and therefore rejected, again to minimize fee disputes.

11. The data collected for this matrix runs through 2020. To generate rates for 2021 and subsequent years, an inflation adjustment (rounded to the nearest whole dollar) was added. The United States Attorney's Office determined that, because courts and many parties have employed the legal services index of the Consumer Price Index to adjust attorney hourly rates for inflation, this matrix will do likewise. *E.g., Salazar v. District of Columbia*, 809 F.3d 58, 64-65 (D.C. Cir. 2015); *Eley*, 793 F.3d at 101-02; *DL*, 924 F.3d at 589-90.

12. This matrix was researched and prepared by Brian Fitzpatrick, the Milton R. Underwood Chair in Free Enterprise and Professor of Law at Vanderbilt Law School, with the help of his students.

13. This matrix and an alternative, preexisting matrix were extensively examined, and, based on that analysis, this matrix was the one selected for computation of the hourly rates for the attorneys' fees awarded in *J.T. v. District of Columbia*, Civ. A. No. 19-0989, 2023 WL 355940 (D.D.C. Jan. 23, 2023) (Howell, C.J.).